## CHARLESTON.

BLANKENSHIP *v.* KANAWHA & M. RY. Co.

Submitted January 16, 1897—Decided March 20, 1897.

1. JUSTICE OF THE PEACE—*Process—Appearance—Waiver—Appeal.*

   In an action before a justice of the peace, the defendant, not having entered a special appearance before the justice for the purpose only (and so stating in submitting his motion) of quashing the writ or return, cannot, on appeal to the circuit court, take advantage of any defect in the writ or return, either by motion to quash, or by a plea in abatement. *Layne* v. *Railroad Co.,* 35 W. Va. 438. (p. 139.)

2. JUSTICE OF THE PEACE—*Summons—Guardian ad Litem.*

   A summons sued out in the name of J. W. B., guardian *ad litem* of W. B., a minor, before a justice, although not in the best form, yet, aided by the provision in section 26 of chapter 50 of the Code, in relation to proceedings before justices, that no summons shall be quashed or set aside for any defect therein if it be sufficient on its face to show what is intended thereby, is held sufficient, the defendant not being misled by it. (p. 139.)

3. PARENT AND CHILD—*Gifts—Personal Property.*

   The object of section 1 of chapter 71 of the Code, is not to prevent a minor from holding such personal property as his father may deem proper to donate to him or allow him to hold, when not in fraud of the rights of others. (p. 140.)

4. PARENT AND CHILD—*Minors Personal Property.*

   W., nineteen years of age, employed away from home, took a horse for his wages, and took it home to his father's, with whom he was living; and the father not only never claimed the horse, but recognized the son's right and title to it, and, two months after the son got the horse, the father traded him a mule for the horse; the father testifying that the horse was the property of the son, and that the father was not in debt, and was not sheltering the mule in his son's name, to escape payment of debt. *Held,* that the mule was the property of W., the son. (p. 140.)

5. RAILROADS—*Live Stock—Negligence—Damages.*

   On a light, moonlight night, a passenger train of cars was coming at usual rate of speed on a clear, straight track, where a mule upon the track could be seen two hundred and fifty yards or more. A mule goes up a fill to the railroad track far enough in front of the engine to walk along the track in the direction the train was going, some forty feet before

the engine overtook and killed it, the engineer failing to ring the bell or blow the whistle, or to do anything to prevent the accident, if possible. *Held*, to be evidence tending to prove negligence on the part of defendant, and, in the absence of any rebutting evidence, is deemed sufficient to support a verdict for the plaintiff. (p. 143.)

Error to Circuit Court, Kanawha county.

Action by Wilburn Blankenship, by guardian *ad litem*, against the Kanawha & Michigan Railway Company. From a judgment for plaintiff, defendant brings error.

*Affirmed.*

COUCH, FLOURNOY & PRICE for plaintiff in error.

J. F. CORK for defendant in error.

McWHORTER, JUDGE:

On the 25th day of October, 1893, John W. Blankenship, guardian *ad litem* of Wilburn Blankenship, commenced before a justice a civil action for the recovery of damages for a wrong, against the Kanawha & Michigan Railway Company, claiming one hundred and ten dollars damages, founded upon the following complaint: "The plaintiff, for his right of action against the defendant, says that on the——— day of———, 1893, the said defendant ran its locomotive negligently and carelessly against a certain mule, the property of said Wilburn Blankenship, the infant plaintiff; whereby, and by reason of said negligent and careless act of said defendant, the said mule of said plaintiff was, on the said——— day of———, 1893, killed, to the damage of the said plaintiff $110, and therefore he sues." The writ was returnable October 31, 1893, at 10 o'clock A. M., on which last-mentioned day the following appears from the record to be the proceedings had: "Present, the plaintiff, by his counsel; the defendant, by its counsel. No delay being required, the guardian, John Blankenship, consented in writing to serve as guardian for Wilburn Blankenship, and to become responsible for all costs if he fail in the action. The defendant moved to quash the writ, and return thereon, which motion is overruled. The defendant then moved to dismiss the action, for errors apparent in the papers and on the record, which

motion is overruled. The defendant then pleaded not guilty. Witnesses for the plaintiff sworn, the defendant offering no testimony. Judgment was thereupon rendered that the plaintiff do recover the sum of 110 dollars, with interest from the 31st day of October, 1893, until paid, and his costs expended in the prosecution of this suit. Thereupon the defendant appeared, and tendered its bond, signed by George E. Price and George S. Couch, in the penalty of $220, conditioned according to law, which was deemed sufficient, and appeal allowed." On the 8th of December, 1893, upon the case being called in the circuit court of Kanawha county, "the defendant, by counsel, appeared only for the purpose of moving to quash the process and return therein in this case, and, in support of said motion, offered to prove, and asked to be allowed to prove, that the process served upon the defendant in this case was not signed by the justice, and was therefore a nullity, which motion the court overruled, and refused to hear any evidence upon said motion, to which ruling the defendant objects and excepts, and thereupon the defendant appeared generally, and pleaded not guilty," and a jury was impaneled, and, having heard the plaintiff's evidence in full, the defendant moved the court to exclude said evidence from the jury, which motion, being argued and considered, was overruled, to which defendant excepted. The jury then rendered the following verdict: "We, the jury, find for the plaintiff, and assess his damages at $110,"—which the defendant moved to set aside, as being contrary to the law and the evidence, which motion was also overruled, and exception taken thereto.

The first assignment is that the court erred in overruling the defendant's motion to quash the writ. The object of the writ is to bring the defendant into court, and his general appearance in the case cures all defects in the process and its execution. The appearance in this case was not a special appearance. While it is true the motion to quash the writ and return was the first motion made, it was not stated by counsel for defendant that he appeared for that purpose only; and upon the motion being overruled, without taking any exception or making objection thereto, he made another motion to dismiss, upon which motion being also overruled, he plead not

guilty, and the case proceeded to trial. In *Spooner* v *Railroad Co.*, 115 N. Y. 22 (21 N. E. 696), where the same question arises, Justice French, in delivering the opinion of the court, says: "The difficulty was one rather of form than substance, and had its basis in the title of the action alone, which was 'Walter C. Spooner, as Guardian *ad litem* of Ethel A. Spooner, an Infant, under the Age of Fourteen years.' The complaint, however, stated a cause of action in favor of the infant, averring a wrong done to her and suffered by her, and so indicating that she was the real plaintiff, appearing by her guardian *ad litem*. The defendant was not misled. The answer correctly interpreted the meaning of the complaint, in spite of the informality of the title, for the defense was rested upon a denial of the negligence alleged, and an assertion of contributory negligence on the part of the infant. The formal defect of the title was therefore properly disregarded when raised at the close of the plaintiff's case, and the trial court was justified in construing the complaint as setting out a cause of action in the name and behalf of the infant appearing by her guardian." In *Railway Co.* v. *Styron*, 66 Tex. 421, 425 (1 S. W. 161, 162), the court says: "It is urged that the action should have been brought in the name of Millie Styron, by her next friend, and that it was not sufficient when brought by the next friend for the minor's benefit. The proposition is that Millie Styron, named as plaintiff, might prosecute the action by W. W. Styron, stated in the petition to be her next friend, but that W. W. Styron, professing to act as next friend for Millie Styron, setting out a cause of action inuring to her alone, and asking a judgment for her use and benefit, could not be maintained; that an action by W. W. Styron for Millie Styron could not be sustained, while an action in the name of Millie Styron by W. W. Styron could be. This would seem to us to make the rights of parties to depend upon a mere formality, which can be of no essential importance. * * * The essential facts are that the action must be prosecuted for the use and benefit of the minor, by some proper representative. * * * When it appears with certainty, as it does in this case, that the action is based on the right of the minor, that the relief sought is such as the minor alone would be entitled to on

the facts pleaded, and that this is sought for the use and benefit of the minor, then we are of the opinion that the minor is the real plaintiff, whatsoever may be the formula used. This is in accordance with what we understand to have been the effect of the rulings heretofore made in this state." *Cannon* v. *Hemphill*, 7 Tex. 199; *Moore's Adm'r* v. *Minerva*, 17 Tex. 23; *Martin* v. *Weyman*, 26 Tex. 469; *Railway Co.* v. *Bradley*, 45 Tex. 175; and *Abrahams* v. *Vollbaum*, 54 Tex. 227. "Such a rule commends itself to reason, and, as fully as would that insisted upon, secures the right of a minor, without prejudice to a defendant. There is no doubt that cases may be found in which it has been held that the pleadings must show, in so many words, that the action is brought by the minor by next friend. Such rulings, however, seem to us to give effect to form, rather than to substance. Whether the petition be worded in the one formula or the other, the adverse party and the court are equally advised of the cause of action, the right in which the recovery is sought, and of the person to whose benefit the recovery is to inure. In the one case, as in the other, the court has the same power over the person who appears as next friend, and, with equal facility, may protect the interest of the minor by shaping its judgment or decree to that end." It seems to me the Texas court takes the common-sense view of the question, and is strongly supported by the New York court in the case above cited. The summons in the case now under consideration is aided by the following provision in section 26 of chapter 50 of the Code, in relation to proceedings before justices: "No summons shall be quashed or set aside for any defect therein if it be sufficient on its face to show what is intended thereby." In consideration of the decisions of this Court, and of the supreme court of Virginia, I should not go so far as the Texas court has gone in a case originating in a court of record; but in view of the provisions aforesaid, contained in said section 26, I am of opinion that the summons in this case, while not in the most approved form, is nevertheless sufficient on its face to show what is intended thereby, and the defendant is not misled by it. The defendant, not having entered a special appearance before the justice for the purpose only (and so stating on submitting his motion) of quashing the

writ or return, "cannot on appeal to the circuit court take advantage of any defect in the writ or return, either by motion to quash, or by a plea in abatement." *Layne* v. *Railroad Co.*, 35 W. Va. 438 (14 S. E. 123). The court did not err in overruling the defendant's motion to quash the writ and return.

It is contended that "the court erred in refusing to exclude the plaintiff's evidence from the jury, as the same, if it proved anything, proved that there was no right of action in the plaintiff, but if it existed at all, was in the father of the plaintiff, who was the owner of the mule at the time it was killed. Wages and mule belonged to the father" (Code, c. 71, s. 1); and "(a) the testimony did not tend to show any negligence on the part of the defendant that resulted in the death of the mule." The object of the statute (*Id.*) is not to prevent a minor from holding such personal property as his father may deem proper to donate to him, or allow him to hold, when not in fraud of the rights of others. "When the donee of personal property was under the age of 21 years, and lived with his father, the donor, the possession of the donor of the gift is consistent with the donee's right, and is not even presumptive evidence of fraud." 8 Am. & Eng. Enc. Law. p. 1335, and cases cited. And, "when no fraud is shown, the voluntary relinquishment by the father to the son is good, as against the donor's subsequent creditors." *Randall* v. *Lang*, 23 Ala. 751. "Where a father permits his child, residing with him, to make sale of personal property, which he has given him while so residing with him, of which he has had possession only at their residence, and to invest said gift, or the proceeds of the sale thereof, in other personal property, in the name and for the use of such child, the property in which such proceeds are invested is the property of the child." *Lowther* v. *Lowther*, 30 W. Va. 104 (3 S. E. 42). In this case the plaintiff was a young man, nineteen years of age, who was employed away from home, and took a horse for his wages, and took it home to his father's, with whom he was living; and the father not only never claimed the horse, but recognized the plaintiff's right and title to it, and, two months after plaintiff got the horse, the father traded him the mule (that was afterwards killed) for the horse. The father states that the horse was

the property of plaintiff; that he (the father) was not in debt, and was not sheltering the mule in his son's name to escape the payment of debt. The mule, when killed, was the property of the plaintiff, Wilburn Blankenship.

Defendant contends that the testimony did not tend to show any negligence on the part of the defendant that resulted in the death of the mule. Let us look to the testimony touching this point. Wilburn Blankenship says: "The night the mule was killed was a very bright night, and one could plainly see. Could see a mule upon the track a distance of 250 yards. Stepped 250 yards upon a similar night, and saw a man standing on the track. * * * There was a fill where the mule was killed, eight or ten feet high, and as wide as the ties on top, and about 200 yards long. Cattle guard at lower end of fill. Path led up on fill at upper end of cattle guard. Fill runs out at upper end, and no cattle guard at that point. From said cattle guard towards Charleston road mainly level; up grade, if anything. Mule was killed at night, little before 10 o'clock. Witness was at singing school, and on his way home when he found the mule dead. Heard train blow at cart factory, some half mile below where mule was killed. Schoolhouse was 200 or 300 yards from track. Heard whistle at cart factory, and the next whistle blown was for Elk City, nearly a mile above where mule was killed. Was not positive about bell. Train did not stop that night between cart factory and Elk City. Did not examine for mule tracks. The railroad track, for perhaps a mile above and below where mule was killed, was straight and unobstructed, and there were no bushes or anything to prevent an object on the track from being seen. That the mule killed was the property of the plaintiff." John Blankenship states: That "he is the father of the plaintiff. That the mule was killed by defendant's passenger train a little before 10 o'clock at night on September 21, 1893. That witness was in the bottom, some 200 or 300 yards from the mule, at the time it was killed. Heard train blow at cart factory, some half mile below. Knew mule was out, and witness was listening for whistle. Heard no whistle after train passed cart factory until it blew for Elk City, or the crossing below Elk City, some distance above where the mule was killed.

Went to look after the mule, and found it dead in a ditch by the bottom of the fill. Saw tracks where mule came up on fill just above the cattle guard, and followed track between ends of ties, outside of the rails, about 30 feet from where mule came on fill. Then tracks got between rails, and there were four or five tracks between the rails, covering a distance from 6 to 10 feet. From where last tracks were seen to where mule was lying was a distance of from 30 to 40 feet. From cattle guard above where mule came on fill to where mule was lying dead was 30 steps. Tracks could only be seen between ties, and looked as if made by the mule while walking. Found mule from five to ten minutes after it was struck. Was dead when found. Nothing to have prevented the engineer from seeing the mule for one-half mile. It was killed by the evening passenger train of three coaches. It was a light moonlight night. Bell was rung at first crossing, some 200 or 300 yards above where mule was killed. No bell was rung before, after passing cart factory. Do not know rate of speed. The mule belonged to the plaintiff, the son of the witness While the mule was traveling on the fill outside of the rail, the train could not have passed by without striking it. There was no path at the outside of the ends of the ties. Mule came up on fill in path at upper end of crossing. Plaintiff is 19 years old, and has always lived with witness. Plaintiff worked for liverymen Jarrett & Riley some two months. They paid him for his services with a horse, which the witness, who is a drayman by occupation, used in his business, and by means of which, in part, gained his livelihood. Witness also owned a horse of his own, which he also used in his said business. Witness traded the horse to me two months after it was acquired for the mule in controversy. Said trade was made with knowledge of plaintiff. Witness worked the mule a short time, as he had before worked the horse, until it was killed by defendant's train. That plaintiff is single, and lived with his father. Witness not in debt, and not sheltering mule in son's name to escape the payment of debt. Witness had not been sued for debt." Witness Spicer Poindexter states: That "he was at schoolhouse, some 50 or 75 yards from the track, at the time the train passed by that killed the mule. Heard train blow at factory some

half mile below. Next whistle blown was for Elk City, or a road crossing some three-fourths mile above where mule was killed. That no bell was rung from time train passed factory until it got above the mule. Track was straight, and there was no obstructions to prevent the object on the track from being seen. Mule was killed by passenger train running at ordinary rate of speed. Track was level, or a little upgrade. Witness was going towards track. Saw mule dead some two or three minutes after train went up. Mule was killed about ten o'clock at night; cannot fix time exactly, but was within 60 minutes from this time. Houses in neighborhood along the line some 200 or 300 yards apart. It was a light moonlight night. People were accustomed to walking the track at that point. There was a path at the bottom of the fill, but there was no path at the end of the ties." "Agreed statement of facts" shows that the "mule was killed by defendant's train, and was worth $110; that at the point the mule was killed was on a fill, and the track was straight for a mile in the direction from which the train was coming that killed the mule, and that the road of the defendant was not fenced upon the side of the track from which the mule came onto the fill." *Hoge* v. *Railroad Co.*, 35 W. Va. 562 (14 S. E. 152).

The night was light, with the light of the moon. It is more than likely the engineer saw the mule coming up the side of the fill to the track. It was his duty to have discovered it at least as soon as it reached the track, and started up between the ends of the ties. It was then substantially on the track, as it is shown that the fill was only as wide at the top as the length of the ties, and that the train could not pass without striking it. When it reached the top of the fill, it must have been at least three hundred feet in front of the engine, as it is shown to have walked some forty feet between the ends of the ties and upon the track before its tracks are lost sight of, and where the engine probably struck it. There is no doubt in my mind that it was clearly the duty of the engineer to do what he could by the use of his alarm whistle, and such other means as he may have had at his command to frighten the mule from the track, and, by the proper use of the same in time, he might have prevented it from coming to the track. It is shown by the evidence that he did nothing to

prevent the injury.    John Blankenship says:    "Knew mule was out, and was listening for whistle.    Heard no whistle after the train passed the cart factory (one-half mile below) until it blew for Elk City, or the crossing below Elk City some distance above where mule was killed, and no bell was rung after passing factory until reaching Elk City crossing."    Plaintiff says:    "Heard whistle at cart factory, and the next whistle blown was for Elk City. Was not positive about bell.    Train did not stop that night between cart factory and Elk City.    Was not positive about bell.    Train did not stop that night between cart factory and Elk City."    Spicer Poindexter, witness, says: "Heard train blow at factory some one half mile below. Next whistle blown was for Elk City, or a road crossing some three-fourths mile above where mule was killed. No bell was rung from time train passed factory until it got above the mule."

While the evidence may not make a strong case against the defendant, it shows that the engineer of the defendant company left undone what was clearly his duty to do, not only to prevent, if he might, the injury complained of, but for the security of the passengers and the train in his charge; and, in the absence of any rebutting evidence, it is deemed sufficient to support the verdict.    The judgment of the circuit court is affirmed, with costs and damages to the appelle, against the plaintiff in error, according to law.

*Affirmed.*