STATE *ex rel.* CLARENCE W. SPIKER

*v.*

THE WEST VIRGINIA RACING COMMISSION, *et al.*

(No. 10364)

Submitted January 30, 1951.   Decided March 1, 1951.

*James M. Mason, III, F. D. Nichols,* for relator.

*William C. Marland,* Attorney General, *Thomas J. Gillooly,* Assistant Attorney General, for respondents.

*Robert O. Read, amicus curiae,* on behalf of Dan Chappell, President, Horsemen's Benevolent & Protective Association.

HAYMOND, JUDGE:

In this original proceeding, instituted in this Court by the State of West Virginia at the relation of Clarence W. Spiker, the petitioner Spiker seeks a writ of mandamus to compel the defendants, the West Virginia Racing Commission, a corporation, Mont M. McIntire, its Chairman, Frank J. Brooke, its Vice-Chairman, and Gordon P. Fought, a member of the Commission, to set aside the findings of the Commission, based upon the reported action of the stewards representing the Commission and the Wheeling Downs Racing Association, on September 6, 1950, in suspending a race horse, named Lucky Linda, owned by the petitioner, and its trainer, for a period of six months from that date, and in forfeiting the purse won by the horse in a race run on September 1, 1950, and to set aside an order made by the Commission on September 27, 1950, which confirmed the ruling of the stewards but which exonerated the petitioner of any guilt. Upon the filing of the petition on January 15, 1951, a rule was issued by this Court returnable January 30, 1951, and at that time this proceeding was heard and submitted for decision upon the petition, the answer of the defendants, the testimony given by the petitioner at a hearing held by the Commission on September 26, 1950, a brief of Horsemen's Benevolent and Protective Association, as amicus curiae, and the briefs and the oral arguments of the attorneys in behalf of the respective parties.

The material facts are not disputed and the questions presented are questions of law.

The petitioner is a duly licensed owner of thoroughbred race horses and in July, 1950, employed E. G. Hoffman, a reputable and experienced trainer to train the

race horses owned and entered by the petitioner in various races conducted by licensed racing associations in West Virginia and in other states. He is also a breeder of thoroughbred race horses and operates and maintains, upon a farm in Berkeley County, West Virginia, an establishment of that character. He entered two of his horses at a meeting conducted by the Wheeling Downs Racing Association, a duly licensed association, during the period July 22, 1950, to September 30, 1950, at Wheeling, West Virginia. The horse, Lucky Linda, was entered in the fourth race held at Wheeling Downs on September 1, 1950, and was the winner of that race. After the race, the horse was subjected to a urine test as provided by the rules of the Commission. The test disclosed a positive reaction and that the urine contained a drug known as procaine. As a result of this test, the stewards, on September 6, 1950, suspended the horse and the trainer for a period of six months, ordered the purse won by the horse to be forfeited and redistributed, and reported their action to the Commission. The event won by Lucky Linda was a race in which the horses entered were known as "maidens". In horse racing a race for "maidens" is a race in which none of the horses entered had ever been a winner. It is evident that the result of the fourth race and the presence of procaine in the urine of the winner convinced the stewards that the drug had stimulated the winning horse.

On September 5, 1950, the trainer, Hoffman, who had received some information as to the result of the test, told the petitioner, who was then absent from Wheeling, in a telephone conversation, that the Commission had "scratched" his horse named Rugged "due to suspicious findings on Lucky Linda" and that he had not given the horse any medicine "that was of a dope nature"; and on the following day, September 6, 1950, the trainer confirmed the telephone conversation in a report to the petitioner. The testimony of the petitioner indicates that he knew on or prior to September 6, 1950, that the test had disclosed the presence of procaine in the urine

of his horse, Lucky Linda. It appears that about that time the petitioner employed an attorney to represent him and that his attorney by letter dated September 7, 1950, addressed to the Commission, stated that he represented the petitioner, the owner of the horse suspended by the stewards on September 6, 1950, and that the petitioner was informed that the chemist serving the Commission reported the presence of procaine in the urine taken from the horse after winning the race on September 1, 1950, at Wheeling Downs, and requested that an early hearing of the matter be granted the petitioner. In response to the foregoing letter the secretary of the Commission, by letter dated September 12, 1950, notified the attorney for the petitioner that the request for a hearing had been granted and that the hearing would be held on Tuesday, September 26, 1950, at 10:00 A. M. at the office of the Commission at Wheeling Downs, Wheeling, West Virginia.

On September 26, 1950, the petitioner and his attorney appeared before the Commission and the hearing was held. From the transcript of the proceedings it appears that the petitioner, by his attorney, objected to the sufficiency of the notice and that some discussion occurred between the attorney for the petitioner and the chairman of the Commission in which the attorney contended that because of the failure of the notice to contain a report of the finding of the stewards as required by Rule No. 98 of the Commission, he and the petitioner had not been informed of the charge against the horse. Notwithstanding the objection to the sufficiency of the notice, the attorney for the petitioner, after being asked if he was then ready for a hearing with respect to the horse, replied in the affirmative and the Commission proceeded with the hearing. The only testimony produced at the hearing was that given by the petitioner. He gave evidence in relation to various matters about which he was interrogated and in the course of his examination testified that at the time the race was run and won by his horse on September 1, 1950, he was not present at Wheeling

Downs; that the horse was sound; and that procaine is a drug but is not a stimulant. He indicated that procaine would relieve pain, but stated that he did not know that his horse, Lucky Linda, had been or was to be given any stimulant or drug; and that he did not authorize or permit anyone to administer any such substance. After the hearing was concluded, the Commission, on September 27, 1950, approved the findings of the stewards, entered the order of which the petitioner complains, and by letter of that date notified the attorney for the petitioner of its action.

In substance, the principal contentions advanced by the petitioner to support his right to the writ for which he prays are: (1) The rules of the Commission upon which its action is based are not authorized by the statute by which the Commission is created and under which it is authorized to act; (2) the rules of the Commission upon which its action is based, if authorized by the statute, are violative of the due process of law provisions of the Fifth and Fourteenth Amendments to the Constitution of the United States and of Article III, Section 10 of the Constitution of West Virginia; and (3) the notice given the petitioner by the Commission of the hearing on September 26, 1950, is fatally defective and, in consequence, the action of the Commission upon the hearing is invalid.

The West Virginia Racing Commission, as presently constituted and as it now operates and functions, was created and its powers and duties are defined by Chapter 71, Acts of the Legislature, 1935, Regular Session, as amended by Chapter 158, Acts of the Legislature, 1947, Regular Session, and the statute as amended appears in Sections 12 to 23, inclusive, Article 23, Chapter 19 of Michie's Annotated Code, 1949. Section 1, Article 23, Chapter 71, Acts of the Legislature, 1935, Regular Session, in part provides that the Commission "shall have all the powers necessary to carry out fully and effectively all the purposes of this act and shall have full power to prescribe rules, regulations and conditions under which

all races shall be conducted within the state of West Virginia. The commission may at any time for the violation of any rule or for any fraudulent practices, require the removal of any official or employee employed by any licensee hereunder, and shall have power to summon witnesses and to administer oaths or affirmations to such witnesses and take testimony whenever in the judgment of said commission it may be necessary for the discharge of its duties." Pursuant to the first quoted provision of the statute, the Commission has adopted and promulgated a body of rules in which these rules, pertinent to the issues involved in this proceeding, and in effect in September, 1950, are included:

"97. If any person be aggrieved by any order of suspension, exclusion, ruling off or fine imposed by the Stewards, such person may have a review of the decision of the Stewards before the West Virginia Racing Commission in the manner provided for in Section 98 hereof. During the pendency of such review, the order of the Stewards shall be operative and in full force and effect.

"98. Any person aggrieved by the action of the Stewards of any Association licensed by the West Virginia Racing Commission may have a review of such action, proceeding or decision by the Stewards by filing a written protest with the West Virginia Racing Commission not later than five days after such action, proceeding or decision by the Stewards.

"The written protest shall be addressed to the West Virginia Racing Commission and shall set forth the action, proceeding or decision of the Stewards complained of and the date when such action, proceeding or decision occurred or was rendered.

"Thereupon the chairman of the West Virginia Racing Commission shall fix a time and place for said hearing and shall give notice in writing by registered mail to the last known address to the party aggrieved of the time and place of such hearing. Said written notice shall contain a report of the findings of the Stewards.

"The notice for the hearing must be issued and mailed not less than five days nor more than thirty days before the date of the hearing.

"The chairman shall preside at said hearing and shall determine the order of introducing evidence. The party aggrieved shall have the right to appear. At the conclusion of the testimony, the said West Virginia Racing Commission shall immediately take the case under advisement and shall within a reasonable time make its findings, and, should its findings be to the effect that the person protesting against the rulings of the Stewards was guilty of corrupt, fraudulent or improper practice or conduct, or violation of any of the rules of the Association, the Secretary of the West Virginia Racing Commission shall at once notify such person of such decision by the West Virginia Racing Commission and the ruling of the said Stewards shall be final and conclusive by the order of the West Virginia Racing Commission.

"In the event the West Virginia Racing Commission finds that the party protesting was not guilty, the action of the stewards shall be set aside and revoked.

"268. No narcotic, stimulant or drug shall be used, no drench of anything shall be administered, and no electrical, mechanical or other appliance other than the ordinary whip shall be used for the purpose of stimulating the horse or affecting his speed in any way in a race. Any person so offending shall be suspended for not less than six months, and, also, any horse showing positive from a saliva and/or urine test shall be suspended, and the case referred to the West Virginia Racing Commission for any further action deemed necessary.

"269. Any trainer, who injects, gives, uses or administers any drugs or medicines of any kind whatsoever, or who authorizes, allows or permits any other person to give, inject or administer any drugs of any kind whatsoever to a horse within forty-eight hours prior to the running of a horse in a race, must give notice to the stewards of the use, injection or administering of said drugs or medicines prior to the running of said

race. Any trainer failing to give such notice may be suspended or his license revoked.

"If a horse is scratched as a result of such medication, said horse cannot be entered again for five racing days.

"271. Any owner, trainer, foreman, groom, stable employee or other person connected with any stable found with any narcotic drug in his possession while upon the grounds of any of the tracks under the jurisdiction of the West Virginia Racing Commission shall be ruled off, and such possession shall be deemed sufficient evidence for such ruling without further proof.

"272. Every owner or his authorized agent or trainer of any horse or horses entered to race on any race track licensed by the Commission to operate a race track, shall immediately at any time when requested by the Commission or any of its agents or employees, submit any horse or horses, of which he is the owner or authorized agent or trainer to any veterinary surgeon designated by the Commission for such examination or tests as said veterinarian may deem advisable to make.

"273. The saliva and urine of the winner of each and every race must be taken and from such other horses as the Stewards may direct. In all such cases the trainer shall be held responsible for the condition of his horse or horses. In the event the horse or horses from which said saliva and/or urine has been taken shall have been found by the chemist to show evidence of the administration of narcotics or drugs, said responsible person so offending shall be suspended for not less than six months, and the case referred to the West Virginia Racing Commission, for any further action deemed necessary.

"274. The veterinarian, as soon as possible, shall send or deliver to the chemist designated by the West Virginia Racing Commission, a sample of such saliva and/or urine for analysis, and said chemist shall report to the presiding Steward the result thereof. Should the report of such chemical analysis disclose a positive result indicating a narcotic, stimulant or drug had been

administered, or should any chemical analysis of other excretions of body fluids taken from any horse, which has run in any race, disclose beyond doubt that a narcotic, stimulant or drug has been used, any person so offending shall be suspended for not less than six months, and the case referred to the West Virginia Racing Commission for any further action deemed necessary.

"Any purse won by a horse found to have been stimulated shall be returned, and the same, upon its return, shall be redistributed as if said horse had been disqualified. The suspension against a horse and against the person or persons responsible for his stimulated condition shall not be terminated at the end of the period imposed by the Stewards or the commission unless the sum won by the horse is returned."

The petitioner contends, in support of the first ground relied upon by him, that the language of the statute, which confers upon.the Commission the necessary power to carry out fully and effectively all the purposes of the Act and to prescribe rules, regulations and conditions under which all races shall be conducted within the State of West Virginia, is not broad enough to empower the Commission to promulgate a rule which authorizes the Commission to suspend any horse, when a test of its saliva or urine shows the presence of any stimulant or drug, or to empower it to forfeit or redistribute the purse won by such horse or to inflict upon the owner of such horse any penalty prescribed by any such rule. These matters are specifically dealt with in Rule No. 268 and Rule No. 274 which have been quoted in full in this opinion. This contention of the petitioner is devoid of merit and must be rejected. The general purpose of the statute which created the West Virginia Racing Commission is to legalize the business or the enterprise of horse racing under supervision and control of the State to be exercised by the Commission. It is clear that in order to exercise the effective supervision and control contemplated by the statute and clearly intended by the Legislature, the power and the authority of the Commission must necessarily extend to all persons and to

all horses which participate or engage in any activities connected with and essential to the business or the enterprise of horse racing. There can be no horse race without a horse. Horses and owners, trainers, jockeys, and other persons whose efforts or services are required in the conduct of a horse race, and without which the business or the enterprise of horse racing can not be effectively conducted, are necessarily within the scope of the statute. It extends and applies alike to participating quadrupeds and bipeds. The exclusion of any of these participants would render the Act ineffective and tend to defeat its manifest purpose. The use of particular language with respect to specified participants, such as jockeys, trainers, and grooms, or other designated employees, contained in various provisions of the statute, does not restrict or limit its general scope or exclude from its operation horses or persons participating in, or whose efforts or services are essential to, the conduct of the business or the enterprise of horse racing, even though such horses or persons are not specifically mentioned or referred to in the statute. It is obvious that if the authority of the Commission to prescribe rules and regulations is limited to only those persons which it specifically mentions, and does not extend to the horses which are entered in the races, or their owners, the power and the authority which the Legislature clearly intended to confer upon the Commission, would be of little, if any, practical use or benefit.

Substantially the same contention as that now advanced by the petitioner was urged upon, and rejected by, this Court in the recent case of *State ex rel. Morris* v. *West Virginia Racing Commission*, 133 W. Va. 179, 55 S. E. 2d 263. There, as here, the rule making power of the Commission, under the above quoted general language of the statute, was challenged and certain rules, then designated as Rules Nos. 245, 246, 247, 247A, 248, 249 and 249A, were assailed as invalid. In that case the challenged rules were held to be valid and the delegation by the Legislature of the right to the Commission to

exercise the police power of the State with respect to the business or the enterprise of horse racing, the control of which had been assumed by the State, was upheld. Rules Nos. 246, 247 and 247A involved and discussed in the *Morris* case, without material change or alteration except as to number, are now respectively Rules Nos. 271, 272 and 269 and are quoted earlier in this opinion. Rules Nos. 245, 248, 249 and 249A, also involved and discussed in the *Morris* case, have since been modified in certain particulars, and as modified are now respectively Rules Nos. 268, 273 and 274 and are also quoted earlier in this opinion.

In the *Morris* case, Rule No. 245 was assailed as invalid. Rule No. 245, considered in the *Morris* case, then contained this language: "245. No narcotic, stimulant or drug shall be used, no drench of anything shall be administered, and no electrical, mechanical or other appliances other than the ordinary whip shall be used for the purpose of stimulating the horse or affecting his speed in a race. Any person so offending shall be suspended for not less than six (6) months, and also any horse showing positive from a saliva test or urine test, containing drugs or stimulant shall be disqualified, and the case referred to the West Virginia Racing Commission for any further action deemed necesary." The same rule, now Rule No. 268, quoted above, is expressed in these words: "No narcotic, stimulant or drug shall be used, no drench of anything shall be administered, and no electrical, mechanical or other appliance other than the ordinary whip shall be used for the purpose of stimulating the horse or affecting his speed in any way in a race. Any person so offending shall be suspended for not less than six months, and, also, any horse showing positive from a saliva and/or urine test shall be suspended, and the case referred to the West Virginia Racing Commission for any further action deemed necessary." It will be readily observed that the only material change in the rule in its present form and the rule in the form in which it was considered in the *Morris* case is that the phrase "any horse showing

positive from a saliva test or urine test, containing drugs or stimulant shall be disqualified" has been superseded by the present phrase "any horse showing positive from a saliva and/or urine test shall be suspended". Rule No. 248, specifically assailed as invalid in the *Morris* case and there upheld as valid, has been modified to the extent of the omission of the provision which imposed responsibility upon the stable foreman or the groom in charge of the horse in case of the unavoidable absence of the trainer and the rephrasing of the provision which suspended the responsible person in case any urine test of a horse was found to be positive; and that rule, as so modified, is Rule No. 273, quoted earlier in this opinion. Rules Nos. 249 and 249A, involved and considered in the *Morris* case, with certain changes not material in the decision of this case, are now incorporated in Rule No. 274, also quoted earlier in this opinion. The provision of Rule No. 249A relating to the forfeiture and the redistribution of any purse won by a horse found to have been stimulated is at present in Rule No. 274 in the identical form, except punctuation, in which it formerly appeared in Rule No. 249A.

The rules under consideration in the *Morris* case, which, as above indicated, are substantially the same as those dealing with the same subject matter, quoted in this opinion, were upheld as valid and as not violative of any provision of the Constitution of the United States or of the Constitution of this State. Though the writer of this opinion dissented from the decision of this Court in the *Morris* case, he and the other members of this Court recognize the binding force and effect of the decision in that case and consider it applicable to, and adversely decisive of, the contentions of the petitioner that the rules of the Commission, assailed as invalid in this proceeding, are invalid because not authorized by the statute and because they are violative of the due process of law provisions of the Constitution of the United States and of the Constitution of West Virginia. In that case, in sustaining the power of the Commission, under the rule making provisions of the statute, to promulgate the

rules then under consideration, and in upholding their validity, this Court said: "We are of the opinion, therefore, that the grant of regulatory power made to the West Virginia Racing Commission by the Legislature, in the exercise of its police power, was legal and valid; and that in consideration of all the circumstances surrounding the establishment and operation of race tracks, and the racing of horses thereon, the Racing Commission, in the promulgation of Rules Nos. 245 to 249-A, both inclusive, did not exceed the power so granted. Admittedly the said rules, especially Rule 248, constitute a harsh exercise of power, but in the circumstances, under which some rule fixing responsibility would seem to have been imperative, we think it was a necessary and valid exercise of power. As stated above, the power to assure fairness in racing must rest somewhere, and responsibility therefor must be definitely fixed, if any practical results are to be expected. * * *. Making the owner-trainer or the trainer responsible for the condition of his horse when it enters a race is one way, and perhaps the best way, of assuring the racing authorities, and the track patrons, that the race will be fair. In our opinion, a rule which so provides cannot be held to be unreasonable or in violation of any statutory or constitutional right." In the syllabus, in specifically sustaining the validity of one of the challenged rules, this Court used this language: "Rule No. 248, framed and promulgated by the West Virginia Racing Commission, under the power of regulation granted to it by the Legislature of this State, by Chapter 71, Acts of the Legislature, 1935, * * *, is a valid exercise of the police power of the State, as related to horse racing over which the State has assumed control, legally delegated to such Racing Commission by the Legislature, and is not violative of any provision of the State or Federal Constitutions." Under the authority of the *Morris* case, which is recognized as the settled law of this State and is now adhered to by this Court, both contentions of the petitioner are rejected and the validity of each of the rules challenged in this proceeding is upheld.

The petitioner insists that the decision in the *Morris* case, which upheld the validity of Rule No. 248 dealing with the suspension of the trainer of a horse the test of whose urine was found to be positive with respect to narcotics does not apply to, or sustain as valid, any rule of the Commission which imposes a penalty against an owner who does not act as trainer of his horse. In the *Morris* case the trainer who was suspended by the Commission under Rule No. 248 was also the owner of the horse. It is contended that there is a valid distinction between the rule of the Commission which authorizes the suspension of a trainer of the horse who is also its owner and the rules which prohibit the owner of a suspended horse from racing it during the period of suspension and deprive the owner of the purse won by such horse. There is no merit in this contention. As already indicated, of necessity, valid rules of the Commission may be adopted and promulgated which apply to and regulate the conduct of, and impose penalties upon, an owner and a trainer alike whether the trainer and the owner are the same person or different persons. It is clear that under the statute, the Commission has the power and the authority to adopt, promulgate, and enforce rules that relate and apply to either or both. There is, however, a clear distinction between the effect of the action of the Commission in the *Morris* case and the effect of its action in this case. In the *Morris* case, because the owner was also the trainer of the suspended horse and other horses, the suspension of the trainer prevented other horses trained by him from participating in races during the period of suspension. In this case, however, the order of the Commission does not suspend the petitioner as the owner of the suspended horse from entering any other horse owned by him in any race or does not undertake directly to interfere with his activities as a breeder of horses. In fact, the order of the Commission expressly holds that the petitioner, as owner, is blameless and free from fault and it adversely operates directly against him only to the extent that it suspends a partic-

ular horse owned by him and deprives him of the purse won by that horse.

In the majority opinion in the *Morris* case, this Court, in language which applies to and adversely disposes of the first two contentions advanced by the petitioner, said: "The State of West Virginia being in full possession of its police power, the Legislature, as a depository of that power, had the right to enact legislation for the regulation of horse racing; had the right to delegate that power to the State Racing Commission; and the promulgation of the rules and regulations with which we are now concerned, was an exercise of the State's power lawfully and legally delegated. The questions of presumption, whether irrebuttable or otherwise, are not here involved. What is involved is the power of the State to make a particular rule or regulation which it deems necessary for the morals and protection of the public good of the State and its people. * * *. As enacted, our racing laws delegated the management thereof to a Racing Commission, and gave it complete power to adopt rules and regulations therefor. In doing so it has chosen to impose upon the owners and trainers of horses entered for racing absolute responsibility as to the condition of the horses. There is no question of any presumption involved. It is a plain exercise of naked, but necessary, power to control a business which, in its very nature, requires strict control. We cannot assent to the proposition that the privileges and immunities of citizens of the United States, under the Fourteenth Amendment to the Constitution of the United States, or otherwise, shall be so far extended as to destroy the power of the State to exercise its police control over horse racing, and other activities, requiring strict regulation in the interest of the common good."

The remaining contention of the petitioner is that the action of the Commission which followed the hearing held on September 26, 1950, is void because the notice of the hearing was fatally defective and, in consequence, the petitioner was deprived of his right to a fair trial and

determination of the questions involved. It is clear that the notice given by the Commission, because of its omission of the report of the findings of the stewards, did not satisfy the express requirement of Rule No. 98 of the Commission. Though the notice was clearly insufficient in that respect, it was sufficient to advise the petitioner of the time and place of the hearing; and pursuant to the notice, the petitioner and his counsel appeared at the designated time and place. The petitioner, by his attorney, objected to the notice as insufficient because it failed to contain a report of the finding of the stewards, and insisted that, because of that omission, the petitioner was not advised of the character of the hearing or given an opportunity to present his defense against the finding of the stewards; but the petitioner and his attorney participated fully in the hearing and did not accept the offer of the Chairman of the Commission to afford the petitioner a further hearing in the matter. It also appears, from the testimony of the petitioner at the hearing on September 26, 1950, that he knew that the charges affecting him were based upon the presence of the drug procaine in the urine of his horse, as disclosed by the test, and it is not apparent how or in what manner the failure of the notice to state the findings of the stewards, which would have disclosed that fact, deprived him of any information or evidence material to his defense that could not have been used at a subsequent hearing involving those matters, which hearing the Commission at the time indicated its willingness to grant but which the petitioner failed to agree to or accept. Instead of insisting upon any proposed or suggested further hearing, the petitioner offered his own testimony and submitted the matter for decision. He did not request a continuance of the hearing or ask for further time to obtain or produce testimony of any other witness. In the circumstances the petitioner must be deemed to have waived any defect in the notice, and he can not now be heard to complain of its insufficiency. Numerous decisions of this Court declare that appearance and participation by a defendant in the trial of the merits of a proceeding operate as a

waiver of alleged defects in and objections to the process or the return of service of such process. *Damron* v. *Williamson Construction and Engineering Company,* 109 W. Va. 122, 153 S. E. 250; *The Chilhowie Lumber Company* v. *Lance and Company,* 50 W. Va. 636, 41 S. E. 128; *State* v. *Thacker Coal and Coke Company,* 49 W. Va. 140, 38 S. E. 539; *Blankenship* v. *Kanawha and Michigan Railway Company,* 43 W. Va. 135, 27 S. E. 355; *Layne* v. *The Ohio River Railroad Company,* 35 W. Va. 438, 14 S. E. 123; *Mahany* v. *Kephart and The Baltimore and Ohio Railroad Company,* 15 W. Va. 609. In *Harvey* v. *Skipwith,* 16 Gratt. 410, the opinion contains this language: "It is a well established rule that by appearing and pleading to the action the defendant waives all defects in the process and in the service thereof. The cases go further and imply such a waiver from the defendants taking or consenting to a continuance, as fully as they do from his pleading to the action. The object of the writ is to apprise the defendant of the nature of the proceeding against him. The fact of his taking or agreeing to a continuance is evidence of his having made himself a party to the record, and, of his having recognized the case as in court. It is too late for him afterwards to say that he has not been regularly brought into court."

The writ of mandamus, prayed for in the petition, is denied.

*Writ denied.*