# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Christopher Grove,**
**Petitioner Below, Petitioner**

**FILED**

February 27, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0217** (Kanawha County13-AA-130)

**The West Virginia Racing Commission,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner, Christopher Grove, by counsel, J. David Bolen, appeals the Circuit Court of Kanawha County's September 24, 2013, order, which affirmed the ruling of the West Virginia Racing Commission ("WVRC").  The WVRC order dated August 20, 2013, suspended petitioner's horse racing permit for six months and fined petitioner $5,000. Respondent, WVRC, by counsel, Kelli D. Talbott, responds in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2012, petitioner held a trainer's permit issued by the WVRC, and was the trainer of a thoroughbred horse named Bubba de France ("Bubba"). On July 28, 2012, Bubba participated in, and won, the fifth race of the day at Charles Town Race and Slots ("Charles Town"), including a purse of $11,000. As a result of Bubba's first place finish, he was selected for drug testing, and blood and urine samples were taken from him. The samples were sent to the WVRC's laboratory, and on August 10, 2012, the laboratory's testing director notified the WVRC that the samples taken from Bubba contained "Nikethamide" and "N-ethylnicotinamide," the metabolite of Nikethamide.[1]

After being notified of the testing results, petitioner exercised his right (under W.Va. C.S.R. § 178-1-50.5.b.), to have split sample testing performed on the specimens taken from Bubba. The split sample was sent to the laboratory of petitioner's choosing, the Louisiana State University ("LSU") School of Veterinary Medicine. On September 14, 2012, petitioner was

---

[1]Nikethamide, a stimulant of the cardiovascular and respiratory systems, is a Class 1 drug with no therapeutic use for horses and a high potential to affect the performance of a horse. Nikethamide carries a "Category A" penalty, pursuant to the Association of Racing Commissioners International Uniform Classification Guidelines for Foreign Substances, adopted by West Virginia in the Thoroughbred Racing Rule, W.Va. C.S.R. § 178-1, Table D.

notified that the results of the testing from LSU also showed the presence of Nikethamide in Bubba's blood and urine samples.[2]

On February 22, 2013, an administrative hearing was conducted by the Board of Stewards of the Charles Town racetrack regarding Bubba's July 28, 2012, positive drug test, and petitioner's responsibility for the positive test result. During the administrative hearing, petitioner argued that he could not be responsible for the presence of the prohibited drug in Bubba's system as he was not present at the racetrack or otherwise in West Virginia from July 26, 2012, through July 29, 2012.[3] On February 20, 2013, the Board of Stewards issued its ruling suspending petitioner's trainer's permit for six months and fining petitioner $5,000 for the Class 1 drug violation.

The Board of Stewards based its ruling upon the application of the Absolute Insurer Rule ("AIR"), W.Va. C.S.R. § 178-1-51.1(a).[4] Pursuant to the AIR,

> "[t]he trainer is the absolute insurer of and responsible for the condition of the horses he or she enters in an official workout or a race, regardless of the acts of third parties. If testing or analysis of urine, blood or other bodily substances or tissues prove positive showing the presence of any prohibited drug, medication or substance, the trainer of the horse may be fined, suspended, have his or her occupational permit revoked, be prohibited access to all grounds under the jurisdiction of the Racing Commission, or may be otherwise disciplined. . . . ."[5]

Because petitioner, as Bubba's trainer, was responsible for Bubba's condition on July 28, 2012, and because Bubba was impaired at the time of his involvement in the July 28, 2012, race, the Board of Stewards reasoned that petitioner's suspension and fine were appropriate.

---

[2] Nikethamide metabolizes very quickly in horses and, thus, the parent drug Nikethamide is eliminated rapidly from the horse, with the metabolite N-ethylnicotinamide remaining in the system longer. The scientific literature on Nikethamide notes that after the short peak concentration period, the concentration for the metabolite is greater than the concentration for the parent drug. Based upon Bubba's test results, he was likely given Nikethamide no longer than twelve hours prior to the race.

[3] Petitioner argued that Bubba was drugged by either a rogue employee (Bubba's assistant trainer) or by a person wholly unknown to petitioner.

[4] The Thoroughbred Racing Rule, W.Va. C.S.R. § 178-1, applied in petitioner's case is the version of the rule effective July 10, 2011. That rule was supplanted by an amended rule, which became effective August 14, 2013. Further amendments to the rule became effective on July 9, 2014. The absolute insurer rule has remained the same throughout the amendments to the Thoroughbred Racing Rule and is located at the same section in every version.

[5] W.Va. C.S.R. § 178-1-51.1(a) (2011).

2

Petitioner appealed the Board of Steward's order to the WVRC, and requested a stay of the suspension of his trainer's permit pending an appeal hearing. Petitioner's request for stay was denied by the Board of Stewards.[6] On April 18, 2013, a hearing on petitioner's appeal was held before an ALJ. The ALJ issued his proposed findings of fact and conclusions of law, and recommended that petitioner's suspension and fine be upheld. On August 20, 2013, the WVRC adopted and accepted the ALJ's recommended decision. Petitioner appealed the WVRC's order to the Circuit Court of Kanawha County.

By order entered January 24, 2014, the Circuit Court of Kanawha County affirmed the decision of the WVRC and ruled that the WVRC's findings were not clearly wrong, and that the penalty imposed upon petitioner was not an abuse of discretion or arbitrary and capricious. In its order, the circuit court, citing this court's ruling in *Lowe v. Cicchirillo*, 223 W.Va. 175, 672 S.E.2d 311 (2008), noted that it could not substitute its own findings and credibility determinations for those of the ALJ. Further, the circuit court stated that the findings of fact made by the WVRC and its ALJ were entitled to substantial deference on appeal. Petitioner now appeals from the circuit court's January 24, 2014, order.

This Court explained the standard of review in such appeals in syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), in which we said that

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in [West Virginia] Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

This Court has also stated:

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) [i]n violation of constitutional or statutory provisions; or (2) [i]n excess of the statutory authority or jurisdiction of the agency; or (3) [m]ade upon unlawful procedures; or (4) [a]ffected by other error of law; or (5) [c]learly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

---

[6]The record reveals that petitioner did not raise the issue of the Board of Stewards' alleged improper denial of his motion to stay in his appeal heard by the WVRC's administrative law judge ("ALJ") or in his appeal of the ALJ's findings to the circuit court. Petitioner abandoned this argument in his intermediate appeals and now, in this appeal, the argument has been resurrected.

3

Syl. Pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W.Va. Human Rights Comm'n*, 172, W.Va. 627, 309 S.E.2d 342 (1983). Although deference is given the administrative agency's factual findings, this Court applies a de novo standard of review to the agency's conclusions of law.

In his appeal, petitioner asserts five assignments of error. First, he contends that the circuit court erred in affirming the WVRC's order, as the record does not support the facts found by the WVRC. Second, petitioner asserts that by not considering the constitutional arguments that he asserted, the circuit court undermined and compromised his constitutional rights, namely his right to due process. Third, petitioner argues that the circuit court erred in not reversing the WVRC's order denying his motion to stay the commissioner's order, as there was substantial evidence which indicated petitioner had no direct connection to the positive drug test result for Bubba. Fourth, petitioner asserts the circuit court was unduly influenced by respondent's proposed order and did not give due weight to petitioner's arguments. Fifth, petitioner contends the circuit court's January 24, 2014, order, betrayed the spirit, purpose, and history of the AIR.

Petitioner's first, fourth, and fifth assignments of error are similar in that they each address the circuit court's determinations as to the credibility of witnesses and the alleged lack of evidentiary support of the WVRC's order, and will be addressed together. In these assignments of error, petitioner argues that the use and application of the AIR to petitioner's case deprived petitioner of his procedural due process rights. Specifically, petitioner contends that if additional efforts had been made to investigate this matter, the question of his involvement would have concluded with a different result. Petitioner alleges that his procedural due process rights were infringed in three ways: (1) there was no actual evidence in the record that petitioner administered any drugs to Bubba; (2) there was circumstantial evidence in the record establishing the guilt of petitioner's assistant trainer; and (3) the WVRC failed to fully utilize its administrative powers to complete a thorough and comprehensive investigation. We find no support for petitioner's arguments.

In this case, the circuit court found that "the evidence in the record below establishes the Commission undertook extensive efforts to attempt to find out anything that it could to explain how the drug got into the horse." The circuit court ruled that "to the extent the Petitioner claims that the Commission did not investigate the drug positive, the record reflects otherwise." We agree. The record shows that the WVRC employed an investigator, who worked in conjunction with a private investigator retained by petitioner, to investigate Bubba's drugging. The WVRC's investigator followed up on the tips and leads provided by petitioner's private investigator, and worked with other agencies to complete the investigation, including a U.S. Postal inspector and the United States Attorney's Office in Martinsburg.

In *White v. Miller*, 228 W.Va. 797, 802, 724 S.E.2d 768, 773 (2012), we ruled that

"[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) [concerning contested cases under the West Virginia Administrative Procedures Act] and reviews questions of law presented *de novo*; findings of fact by the administrative

4

officer are accorded deference unless the reviewing court believes the findings to be clearly wrong."

In addition, "a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by a [hearing examiner] are similarity entitled to deference." Syl. Pt. 1, in part, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 181, 539 S.E.2d 437, 441 (2000). The hearing examiner in the instant case heard testimony from several witnesses and was in the best position to determine the credibility of those witnesses. The hearing examiner found that petitioner held an owner/trainer occupational permit issued by the WVRC that allowed him to own and train horses at West Virginia's licensed racetracks; that a horse that petitioner trained, Bubba de France, was entered in and placed first in the fifth race at Charles Town on Saturday, July 28, 2012; and that samples taken from Bubba after the race contained the prohibited substance Nikethamide. The hearing examiner noted that the Board of Stewards, in its disciplinary action against petitioner, determined that the AIR required petitioner's suspension and fine. The hearing examiner concluded that the record in this case established that the penalty handed down by the WVRC was "fair and just."

After a review of the evidence, the circuit court ruled that the WVRC's findings were not clearly wrong and, thus, could not be disturbed by the circuit court on appeal. The circuit court noted that "[e]ssentially, what the [p]etitioner wants is for this [c]ourt to re-weigh the evidence and find that there is support for his allegation that [his assistant trainer] gave the drug to the horse, in direct contradiction to what the Racing Commission and its hearing examiner found." We agree.

We concur with the circuit court's reasoning that it was not the fact finder in this case and it was not the job of the circuit court, and is not the job of this Court, to re-weigh the evidence. We accordingly find that the circuit court was not clearly wrong in affirming the findings of the WVRC and the suspension and fining of petitioner.[7] The record reveals that petitioner received not only an initial hearing, but multiple levels of review, including an administrative hearing and resulting order and an appeal before the circuit court. In both of those appeals, the tribunals found that there was sufficient evidence to support the findings contested by petitioner. It is clear from the record that there were adequate procedural safeguards in place to protect petitioner in such administrative actions and appeals. Therefore, we find that petitioner's first, fourth, and fifth assignments of error do not warrant reversal of the circuit court's order.

In his second assignment of error, petitioner argues that the circuit court erred in not accurately assessing petitioner's constitutional arguments. Specifically, petitioner alleges that the West Virginia AIR is unconstitutional (a) as it violates a trainer's protected right to due process;

---

[7]In testimony provided to the ALJ, Danny Wright (chief steward for the Charles Town racetrack) testified that the stewards believed that the six month suspension given to petitioner was fair, because the stewards could not establish who actually committed the drugging violation. In making the decision as to petitioner's suspension, the stewards looked at all of the circumstances including petitioner's prior drug positives, and felt comfortable with the penalty imposed.

(b) as the use of strict liability by the WVRC to justify the AIR is not analogous and is inconsistent with other areas of law where legislatures impose strict liability; and (c) as the circuit court did not consider the more constitutionally permissible alternative to the AIR, the rebuttable presumption doctrine.

With respect to the constitutionality of the WVRC's rule, we held in syllabus point one of *Appalachian Power Co., v. State Tax Department of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995), that "[i]nterpreting a statue or an administrative rule or regulation presents a purely legal question subject to *de novo* review." To find that a rule or statute is unconstitutional, it must be shown that the rule or statue is unconstitutional beyond a reasonable doubt. We discussed the Court's role in this process in syllabus point one of *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965), holding that

> "[i]n considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt."

This Court has twice reviewed and approved of the WVRC's power to regulate horse racing, and to prohibit the racing of a horse with drugs in its system. In *State ex rel. Morris v. West Virginia Racing Commission*, 133 W.Va. 179, 55 S.E.2d 263 (1949) and *State ex rel. Psiker v. West Virginia Racing Commission*, 135 W.Va. 512, 63 S.E.2d 831 (1951), this Court upheld the power of the WVRC to enact regulations to prohibit the racing of a horse with drugs in its system and spoke to the constitutionality of regulations promulgated by the WVRC. In *Morris*, we stated that there cannot "be any doubt as to the power of the Legislature to regulate horse racing"[8] and reasoned that

> "[t]he State of West Virginia being in full possession of its police power, the Legislature, as a depository of that power, had the right to enact legislation for the regulation of horse racing; had the right to delegate that power to the State Racing Commission; and the promulgation of the rules and regulations with which we are now concerned, was an exercise of the State's power lawfully and legally delegated. The questions of presumption, whether irrebuttable or otherwise, are not here involved. What is involved is the power of the State to make a particular rule or regulation which it deems necessary for the morals and protection of the public good of the State and its people. The right to engage in horse racing, upon the results of which wagers may be made, is not a natural right,

---

[8]*Morris*, 133 W.Va. at 192, 55 S.E.2d at 270.

6

and is nothing more than a privilege upon which the State, in granting the same, may impose restrictions and conditions. . . . As enacted, our racing laws delegated the management thereof to a Racing Commission, and gave it complete power to adopt rules and regulations therefor. In doing so it has chosen to impose upon the owners and trainers of horses entered for racing absolute responsibility as to the condition of the horses. There is no question of any presumption involved. It is a plain exercise of naked, but necessary, power to control a business which, in its very nature, requires strict control. We cannot assent to the proposition that the privileges and immunities of citizens of the United States, under the Fourteenth Amendment to the Constitution of the United States, or otherwise, shall be so far extended as to destroy the power of the State to exercise its police control over horse racing, and other activities, requiring strict regulation in the interests of the common good."

133 W.Va. at 201-02, 55 S.E.2d at 274.

In accord with our rulings in *Morris* and *Psiker*, we find no merit to petitioner's arguments regarding the unconstitutionality of the AIR. The circuit court's ruling that petitioner is responsible for the positive drug test for Bubba under the AIR, and upholding the penalty imposed upon petitioner for a "Category A" positive drug test, was not an abuse of discretion or arbitrary and capricious.

Petitioner's third assignment of error is that the circuit court erred in not reversing the Board of Steward's order denying petitioner's motion to stay his suspension and fine. An examination of the record reveals that petitioner made the original motion to stay before the Board of Stewards, and the motion was denied. While petitioner appealed the Board's findings regarding his suspension and fine to the WVRC, petitioner did not advance any arguments before the WVRC related to the Board's denial of his motion to stay. Likewise, in the appeal of the WVRC's decision to the circuit court, petitioner did not make any arguments or allege any errors with respect to the Board's denial of his motion to stay.[9] It was not until his appeal to this Court, that petitioner alleged any error as to the Board's denial of his motion to stay, and argued that the circuit court's failure to find that the stay was improper was an abuse of discretion.

We have long held that non-jurisdictional questions raised for the first time on appeal will not be considered. *Noble v. W.Va. Dep't of Motor Vehicles*, 223 W.Va. 818, 679 S.E.2d 650 (2009); *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 524 S.E.2d 688 (1999); and *Whitlow v. Bd. of Educ. of Kanawha Cnty.*, 190 W.Va. 223, 438 S.E.2d 15 (1993). As the record is devoid of any discussion of petitioner's allegations regarding the impropriety of the WVRC's

---

[9]In his brief in support of his Petition for Appeal, petitioner contends that the circuit court erred in not viewing the Board's denial of petitioner's request for a stay as a due process violation itself.

denial of his motion to stay (either before the WVRC or the circuit court), we find the issue is not properly before this Court for consideration.[10]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 27, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENT BY:**

Justice Robin Jean Davis

---

[10]Notwithstanding this finding, after our review of the record, we find that the circuit court did not err in not reversing the Board of Steward's order denying petitioner's motion to stay his suspension and fine. Petitioner's suspension and fine were appropriate penalties under W.Va. C.S.R. § 178-1.

8