353 So.2d 89 (1977)
Robert L. SHEVIN, Chief Administrator of the Department of Legal Affairs, State of Florida, Appellant,
v.
INTERNATIONAL INVENTORS, INC., Appellee.
No. 51102.
Supreme Court of Florida.
December 8, 1977.
Robert L. Shevin, Atty. Gen., and Martin S. Friedman, Asst. Atty. Gen., Tallahassee, for appellant.
Steven A. Anderson of Anderson, Thorn, Grose & Quesada, Tampa, for appellee.
*90 PER CURIAM.
The following [omitting formal parts] is the Final Judgment which is the subject of this appeal.
"1. Plaintiff is a corporation organized under the laws of the State of Virginia for the purpose of evaluating, representing for manufacture, and distributing invention ideas. Plaintiff has engaged in the business continuously and without interruption in the State of Florida and specifically in Hillsborough County from the date of its organization.
"2. On October 1, 1976, an act relating to inventions became effective as the law of the State of Florida. Said act, House Bill 3321, Chapter 501.136 Florida Statutes provides that invention development service contracts shall meet certain requirements and shall contain certain disclosures. Plaintiff, being one of, if not the largest companies engaged in such business in the State of Florida, falls within the regulatory scope of said law.
"3. Non-compliance by Plaintiff with the provisions of Chapter 501.136 could have the result of rendering any contract between Plaintiff and Plaintiff's customers void and unenforceable and might furthermore result in an award against the Plaintiff in the amount of or in excess of $3,000. Non-compliance by Plaintiff could also result in the filing of actions for injunctive relief against Plaintiff in accordance with the statute.
"4. Since becoming aware of the enactment of Chapter 501.136 the Plaintiff has attempted in good faith to make its contracts and operations comply with the intent of Chapter 501.136, having obtained legal counsel and having otherwise expended considerable amounts of time and money in attempting to comply. However, due to substantial and numerous defects, ambiguities and inconsistencies in the law, the Plaintiff has been in serious doubt as to the manner in which it might comply with the law, whether its contracts and operations comply with the law, and as to what its rights and liabilities under the law are.
"5. This is a proper action for declaratory relief under Chapter 86.011 Florida Statutes.
"6. Chapter 501.136(1)(b)3, Florida Statutes is vague, ambiguous and subject to numerous interpretations and the legislative intent cannot be determined without hypothecation or guessing. Furthermore, even if one of the numerous interpretations posed at trial were settled on, sub-section (1)(b)3 constitutes an unreasonable classification of persons protected by the law.
"The expressed purpose of Chapter 501.136 is `... to safeguard the public against fraud, deceit and financial hardship and to foster and encourage competition and fair dealing in the field of invention development services ...' Subsection (1)(b)3 establishes a discriminatory scheme which bears no reasonable or rational relationship to that stated purpose, resulting in an unequal application of and protection under the law. Furthermore, the definition of `customer' under that sub-section, being based upon either the financial worth of the customer or of the business in which he is engaged (depending on which of the numerous interpretations is settled on), unreasonably requires Plaintiff to obtain financial information from the customer, thereby forcing the Plaintiff to infringe upon the customer's privacy. The natural result of this classification and the intrusion into the customer's financial privacy will be to have a chilling effect of Plaintiff's business in many instances and to totally frustrate Plaintiff's business in others.
"7. Subsections (6)(k) and (7)(b)3 of Chapter 501.136 require Plaintiff and other invention developers to disclose in the first oral communication with a customer and in at least ten point boldface type within the contract itself the total number of customers who have contracted with the invention developer, except for those who have contracted within the last thirty days, as well as the number of customers who have received, by virtue of the invention developer's performance, an amount of money in excess of the amount of money paid by such *91 customer to the invention developer. This requirement, particularly when viewed in terms of the vague and ambiguous definition of `customer' as discussed in the preceeding [sic] paragraph, places Plaintiff and other invention developers in an impossible position. In the first place, requiring Plaintiff to disclose the number of its customers and its success factor places it in the dilemma of, on the one hand, making material misstatements of fact to potential customers or, on the other hand, violating the apparent intent of the law. Furthermore, the requirement of reporting plaintiff's success factor will place an unreasonable burden upon invention developers in terms of obtaining and maintaining information relative to the continuing income of their present and former customers. This statutory provision is onerous to Plaintiff and others in the industry and is effectively prohibitive to their right to engage in business in this state without unreasonable or unnecessary regulation.
"8. Subsection (1)(d)3 excludes from the definition of `invention developer' and therefore, from regulation, `any person whose gross receipts from contracts for invention development services ... do not exceed 10% of his gross receipts from all sources during the fiscal year preceeding [sic] the year in which any contracts or invention development services is signed.' The legislative intent here is totally unclear. However, regardless of intent, the real and practical effect of this exclusion is to exempt from regulation:
"(1) Conglomerates and large, diversified enterprises which may be substantially involved in the invention development business yet receiving less than 10% of their gross receipts annually from that function;
"(2) Part-time or occasional invention developers who engage in the business as a secondary or occasional source of income;
"(3) Persons or entities who may be fully engaged in the business of invention development but who have been in existence less than one year.
"There is no rational consistency or logic to these exclusions and they bear no rational relationship to the stated legislative purposes of safeguarding the public and of promoting competition in the field of invention development services. The Court is not persuaded by the state's argument that big businesses or conglomerates may be less suspect or have a higher standard of morals than smaller or less diversified businesses. Such a suggestion has no warrant in fact and its suggestion is totally contrary to the American experience. The purposes of this statute are not served by this unreasonable and arbitrary classification. In fact, the contrary seems true.
"9. Subsections (2)(b), (6)(h) and (7)(b)1 all place unreasonable requirements upon the Plaintiff and others similarly situated. Subsection (2)(b) unreasonably requires Plaintiff to anticipate the amount of fees and costs which might be incurred in speculative future contracts with its customers as well as to provide its customers with copies of those possible future contracts. Subsections (6)(h) and (7)(b)1 unreasonably require disclosure of commissions to Plaintiff or its agents. All of these requirements would have an obvious and substantial negative impact upon Plaintiff's business. At the same time they would have no offsetting substantial benefit to the public and bear no actual or reasonable relationship to the objective sought by the legislature. Furthermore, these disclosure requirements would mandate that Plaintiff divulge corporate statistics, accounts and other information which have traditionally been considered private financial information. The court finds that the facts do not justify such an invasion and that these statutory requirements do not fall within the proper scope of the state's police power.
"10. Chapter 501.136 fails to sufficiently define the activities of Plaintiff which are to be regulated. Crucial to the scheme of the statute are the words `develop' and `promote' which words are not defined in the law. Subsections (1)(a), (d) and (e) apparently were the legislature's attempts to arrive at such a definition but fail to do so to *92 the extent that Plaintiff and others in similar positions would be in serious doubt and uncertainty as to the portions of their business, if any, which are regulated.
"Plaintiff has engaged in its present business for several years. Facts introduced at trial demonstrate that historically Plaintiff has provided basically three forms of services: (1) evaluation of ideas, concepts and inventions (2) representation of those ideas, concepts or inventions to manufacturers and industry (3) distribution of certain products or inventions for sale. While all three of those services are involved with and relate to ideas, concepts and inventions, they are distinct and separable functions. It would seem that the one aspect of Plaintiff's business which might be regulated under the law would be that of representation, since that service, according to testimony, involves activities which one might normally expect to fall under the definition of `develop' or `promote'. However, here again the express language of the statute is vague and ambiguous. A reading of the statute leaves one uncertain as to which activities the legislature intended to regulate and those which it intended to exclude from regulation. The definition is a matter of substantial import to Plaintiff and others within the regulatory scheme of the law.
"If Plaintiff operates under the assumption that all of its activities are regulated by the statute, it will incur substantial costs both in terms of complying with the statute and in terms of impaired business. On the other hand, if Plaintiff assumes that only portions of its activities and certain of its contracts are regulated it is placed in jeopardy of facing the substantial penalties provided under the remedy section of Chapter 501.136. The court does not feel that it can guess as to the meaning of the statute and must find that the law fails to convey sufficiently definite warning as to the proscribed conduct or sufficient definition as to the regulated activity when measured by common understanding and practice.
"11. Chapter 501.136(6)(a) requires a disclosure of certain facts pertaining to `terms and conditions of payment' which are supposedly set forth in subsection (3) of the law. That section deals with `cancellation of contracts for invention development services' and does not appear to set forth `terms and conditions of payment'. Again, this section fails to set forth the activities or conduct of Plaintiff proscribed by the statute and is at least a product of poor draftsmanship.

* * * * * *
"While the court is sympathetic with the expressed legislative intent of safeguarding the public against fraud, deceit and financial hardship and of fostering and encouraging competition and fair dealing in the field of invention development services, and while the Court is further certain that the legislature was well intentioned in drafting this legislation, it cannot help but reach the conclusion that, in numerous specific sections and as an entirety, Chapter 501.136 is constitutionally invalid. The penalties and risks to which Plaintiff would be subjected for violating the provisions of the law are substantial. However, the act is so vague and ambiguous as to make it incapable of proper construction.
"The Court finds the case of Anderson v. D'Alemberte, 334 So.2d 618 (1 DCA, Fla. 1976) to be instructive on this point. In finding there that the test of a statute insofar as vagueness is concerned is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice, the court stated (at page 620):
"`... we may not allow our sympathies to interfere with the constitutional rights of those members of the public who are affected by the statute. All citizens whether in the public or private sector, are entitled to be informed with reasonable precision what acts are proscribed. It is basically unfair and therefore contrary to the American scheme of justice to require a person to act at his or her peril....'
There is no question but that numerous portions of this law are incapable of clear construction. This may be due, as conceded by the State, to `sloppy draftsmanship'. *93 However, neither Plaintiff nor others in a similar position should be required to bear the burden of the legislature's sloppy draftsmanship. Consequently, Plaintiff has been denied due process under Article I Section IX Florida Constitution (1968) and the Fourteenth Amendment of the United States Constitution.
"The Court further finds that even if Chapter 501.136 were not unconstitutionally vague and ambiguous, it does, in numerous provisions, establish arbitrary and unreasonably discriminatory classifications which bear no reasonable relationship to the object sought by the legislature. While reasonable classification may be permitted without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction bearing a reasonable and just relation to the things in respect to which such classification is imposed. Southern Railroad Co. v. Green, 216 U.S. 400-417[, 30 S.Ct. 287, 154 L.Ed. 536] (1910); Reed v. Reed, 404 U.S. 71[, 92 S.Ct. 251, 30 L.Ed.2d 225] (1971). As previously stated, when measured against the expressed legislative purpose of the bill and the articulated reason for it, the statutes do not bear a fair and substantial relationship to the objectives sought by the state. See Morey v. Doud, 354 U.S. 459[, 77 S.Ct. 1344, 1 L.Ed.2d 1485] (1957) and American Trust Co., Inc. v. South Carolina State Board of Bank Control, 381 F. Supp. 313 (D.S.C. 1974). Furthermore, the court finds that Chapter 501.136, as specifically stated in the findings above and in general, constitutes an onerous and oppressive regulation of a legitimate business within this state. Article I Section 2 of the Florida Constitution (1968) guarantees to everyone in this state the inalienable right to be rewarded for industry and to acquire, possess and protect property. Inherent in that protection is the right to do business and to contract free from unreasonable government regulation. The court finds that the cumulative effect of the statute would be to substantially diminish the Plaintiff's ability to engage in business in the State of Florida and might constitute a substantial prohibition of the business altogether because of substantial impossibility of compliance. Such a result constitutes an unconstitutional infringement on Plaintiff's inherent right of liberty to engage in business.
"The Court is aware that Chapter 501.136 contains a severability clause. However, it is the finding of the court that the statute as a whole cannot be saved. The individual provisions of the law which are constitutionally infirm are so numerous and so material to the purpose of the legislation that the remainder would not be complete and results not contemplated by the legislature would occur if they were merely severed therefrom. It is the specific finding of the Court that Chapter 501.136 is, in its entirety, unconstitutional.
"Plaintiff argues that in addition to its other constitutional defects, Chapter 501.136 is violative of the Federal Supremacy Clause as established in Article VI Section 2 of the United States Constitution on the grounds that the statute conflicts with the purposes of and undermines the effectiveness of Federal Statutes governing patents and copyrights. There appears to be substantial authority in support of Plaintiff's argument, particularly in respect to Section 5(a) of the statute which prohibits an invention developer's acquisition of an interest in inventions. However, in view of the foregoing findings of the Court relative to the other claims of Plaintiff, it is unnecessary to rule on the supremacy question.
"ORDERED and ADJUDGED that:
"1. Defendant's Motion for Summary Judgment is denied.
"2. Florida Statutes Chapter 501.136(1)(b)3 is unconstitutionally vague and ambiguous in violation of Article I Section 9, Florida Constitution (1968) and the Fourteenth Amendment of the United States Constitution and is therefore void and unenforceable.
"3. Florida Statutes Chapter 501.136(6)(k) and (7)(b)3 are constitutionally onerous and unreasonable and violative of Article I Sections 2 and 9, Florida Constitution (1968) and the Fourteenth Amendment of *94 the United States Constitution and are therefore void and unenforceable.
"4. Florida Statutes Chapter 501.136(1)(d)3 violates Plaintiff's equal protection rights under Article I Section 2, Florida Constitution (1968) and the Fourteenth Amendment, United States Constitution and is void and unenforceable.
"5. Florida Statutes Chapter 501.136(2)(b), 6(h) and (7)(b)1 are unconstitutionally onerous and unreasonable regulations and requirements of business in violation of Article I Section 2 Florida Constitution (1968) and the Fourteenth Amendment, United States Constitution and are therefore void and unenforceable.
"6. Florida Statutes Chapter 501.136 is unconstitutionally vague and ambiguous in that it does not sufficiently define `develop' or `promote' nor does it sufficiently place Plaintiff on notice of the conduct and activity proscribed, in violation of Article I Section 9, Florida Constitution (1968) and the Fourteenth Amendment, United States Constitution and is therefore void and unenforceable.
"7. Florida Statutes Chapter 501.136(6)(a) is unconstitutionally vague and ambiguous in violation of Article I Section 9, Florida Constitution (1968) and the Fourteenth Amendment, United States Constitution and is therefore void and unenforceable.
"8. Florida Statutes Chapter 501.136, as an entirety, violates Article I Section 9 and Article I Section 2 of the Florida Constitution (1968) and the Fourteenth Amendment of the United States Constitution, and is thereby void, unconstitutional, ineffective and without force of law and it is,
"FURTHER ORDERED and ADJUDGED that the statutory enforcement officers and authorities and each of them, their agents and servants be permanently restrained and enjoined from exercising any of the powers, rights or duties respecting the enforcement of the act insofar as it purports to confer such rights, powers and duties on said enforcement authorities and each of them."
Such judgment is, in all respects, approved and affirmed, and is hereby adopted as the decision of this Court.
It is so ordered.
OVERTON, C.J., and BOYD, SUNDBERG, HATCHETT and KARL, JJ., and DREW (Retired), J., concur.
ENGLAND, J., concurs with an opinion.
ENGLAND, Justice concurring.
We are frequently called upon to evaluate and construe the solemn acts of the Legislature. Over the years this Court has endeavored to preserve legislative policy whenever possible, to the extent that one astute Court watcher recently described our efforts in these terms:
"I take the position that there's nothing sacrosanct about an act of the Legislature. I know that this Court will leap to the aid of the Legislature on occasion. I have the analogy. The Legislature throws out a statute. It looks like the village drunkard, you know what I mean? And this Court rehabilitates that statute  you know, brushes it off, puts a hat on its head, so it can go home and meet the public in a presentable condition. This Court has done that to many legislative acts."[1]
I agree with the implicit conclusion of my colleagues that this statute is so worded and constructed as to defy our collective best efforts at "rehabilitation".
NOTES
[1] Observation by Joseph Wanick, Esquire, during oral argument in Village of El Portal v. City of Miami Shores, Case No. 51,233, on October 21, 1977.