GULOTTA, Judge.
Injunctive relief was sought in consolidated suits by plaintiffs from a ruling of the Louisiana Racing Commission upholding an order of the Stewards suspending the trainer and disqualifying the winning *836 horse, Elli Kay[1] while awarding the purse and breeder’s fee to the second place horse. The trial court dismissed both suits. An alternative writ of certiorari was granted ordering the trial judge to set a suspen-sive appeal bond (a suspensive appeal was granted) if the matter was heard on the merits,[2] and if he deemed it appropriate, to consider the issuance of a stay order (holding the execution of the trainer’s suspension in abeyance and withholding distribution of the purse and breeder’s award) if the matter was heard on a preliminary injunction only. The trial judge thereafter set the appeal bond but did not grant a stay order. By supplemental order, we granted a stay of the proceedings pending a hearing on the writs and on the disposition of a specially set appeal.[3] A stipulation was entered into in this court by all parties that the matter is before us on the merits and not only from a denial of a preliminary injunction.
In seeking a reversal of the trial court’s decision to uphold • his 60-day suspension, the trainer, Tassistro, complains that the court erred in not finding that the suspension imposed by the Stewards and the Commission is moot.[4]
Tassistro relies primarily on the case of Behler v. Louisiana State Racing Commission, 251 La. 959, 207 So.2d 758.
The pertinent facts in Behler are these — after a hearing before the Racing Stewards, Behler’s license as a trainer was suspended. The Commission affirmed the ruling of the Stewards and plaintiff then filed suit. The court granted a preliminary injunction restraining the Commission from suspending plaintiff’s license. The injunction granted by the trial judge was for a period of 150 days (from March 4 through August 1, 1967). A devolutive appeal was then taken; and when the injunctive period elapsed on August 1, 1967, the suspension commenced to run from that date until its completion on December 30, 1967. Therefore, on February 12, 1968 when the case came before the Supreme Court, the suspension having already been completed, the appeal was held to be moot. In the case at bar, a suspensive appeal was taken suspending the judgment appealed from; therefore, the suspension time does not begin to run until after the determination on appeal. Had a suspensive rather than a devolutive appeal been granted in Behler, a different result would have obtained.
Moreover, it is significant that under the Rules of Racing of the Commission,[5] a suspensive appeal is provided for staying the effect of the Stewards’ action pending disposition by the Commission. This was done in this case. The rule was adopted in ‘furtherance and pursuant to the provisions of LSA-R.S. 4:156 providing for appeals from the decision of the Stewards. There can be no merit to a contention lending to the interpretation of the statutes and rules which would allow a suspensive appeal and at the same time permit the imposition of the suspension to become moot pending that appeal. This approach would be contradictory and inconsistent.
*837 COMMISSION’S RIGHT TO RECONSIDER, REOPEN AND REHEAR EX PROPRIO MOTU
Appellants complain that the court erred in concluding the Commission had the right to reopen, reconsider or conduct a rehearing of the case two days after a vote by the Commission exonerating the owner and the trainer. They argue that a reconsideration cannot be had by the Commission on its own motion as was done in this case. In support of that argument, they contend that reconsideration must be sought by one of the parties in interest and they rely on LSA-R.S. 49:959 which provides that a matter can only be reopened on motion of a party if (1) the decision is contrary to the law and the evidence, or (2) there is newly discovered evidence, or (3) there are other newly discovered issues, or (4) reopening is necessary in the public interest. We find no merit to this argument. We do not interpret the language of the statute to be so restrictive as to prohibit the Commission from timely[6] acting on its own motion, when, in their opinion, it is necessary for the proper regulation of racing in the public interest and to reach a just conclusion. This is consistent with the purposes of the statutes and rules regulating racing.
The grounds for reopening a hearing are broadly written, and there appears to be no intent by the redactors to put a restrictive or narrow interpretation on the grounds for rehearing. Section 4 of LSA-R.S. 49:959 (A), for example, recognizes “other good ground for further consideration of the issues and the evidence in the public interest” as a ground for reopening.
Moreover, LSA-R.S. 49:959(B) reads as follows:
“ * * * Nothing in this Section shall prevent rehearing, reopening or reconsideration of a matter by any agency in accordance with other statutory provisions applicable to such agency * * ”
In the instant case, the record shows that good and valid reasons existed which dictated the reopening of the hearing in the public interest, some of which were:
(A) At the time of the February 29 vote (in which trainer and owner were exonerated) there was unusual confusion and a hectic atmosphere;
(B) Dr. Claude Mauberret, one of the five members who heard the evidence in its entirety, was absent and did not vote;
(C) There was additional evidence to be heard in the case;
(D) The vote to exonerate was 3 in favor and 2 against;
(E) A commissioner voted who did not hear all of the evidence nor read a transcript of the testimony.
Accordingly, we find no error by the trial court supporting the Commission’s decision to reconsider [7] the matter on its own motion.
CAUSES OF SUSPENSION AND DISQUALIFICATION
Now turning to the factual situation, the basis for the action taken by the Commission in upholding the decision of the Stewards is that they concluded Butazoli-din, hereinafter referred to as “Bute”, is a prohibited drug and was administered to Elli Kay; and, therefore, the trainer and owner were negligent for not taking the necessary precautions to prevent this occurrence.
*838 Racing Rule 6 (p) [8] reads as follows:
“No person shall administer, or cause or knowingly permit to be administered, or connive at the administration of, any drug to any horse entered for a race, which is of such character as could affect the speed of the horse in such race. * * * ” (emphasis ours)
The significant part of this provision is that the administration of the drug could affect the speed of the horse in such race.
Rule 6(p) further reads as follows:
“ * * * When a report is received from the State Chemist reflecting in his expert opinion that the chemical analysis of blood, saliva, urine, or other samples taken from a horse indicate the presence of a forbidden narcotic, stimulant, depressant or analgesic, local anesthetic or drugs of any description this shall be taken as prima-facie evidence that such had been administered to the horse. Such shall also be taken as prima-facie evidence that the owner, and/or trainer, and/or groom has/have been negligent in handling of the horse. * * * ” (emphasis ours)
Appellants insist first that Bute is neither a stimulant, depressant or analgesic and could not have affected the speed of Elli Kay in this race, and secondly, that the determination by the Stewards and Commission that Bute was administered is erroneous. They argue that Bute only reduces swelling and heat and indirectly pain if a horse is sore. Appellants further contend the evidence shows the horse was not sore before the race, and there would be no reason to administer Bute.
We do not agree with this line of reasoning.
The record shows that the drug is described as one which prevents swelling and reduces heat in any area in which a horse may be sore. To that extent, it is indirectly a pain killer. According to the testimony of John C. Van Burg, Trainer; Dr. Frank Douglas, Jr., Veterinarian for the Racing Commission; Dr. Donald Dich-arry, Fairgrounds Track Veterinarian; a sore horse, if administered the drug (though not a stimulant), could run as would a sound horse. She could run at her best and up to her full potential. To this extent, her speed could be affected. Were the horse sore and not administered Bute, its speed could be reduced. There is substantial and convincing evidence in the transcript of the hearing that in a broad sense the speed of a horse could be affected by the administration of Bute. The Commission agreed with the determination by the Stewards that Bute could have produced analgesia in, stimulated or depressed the horse and could have affected its speed. The trial judge found no error in this conclusion, and we agree with the trial court.
Considering now appellants’ contention that insufficient proof was adduced before the Stewards and the Commission to show the presence of Bute or a derivative thereof, the evidence showed that six [9] tests were run on the urine sample of Elli Kay by Shilstone Laboratories, State Chemist for the Racing Commission, five of which showed positive for Bute or a derivative thereof.
Appellants suggest that the urine samples tested could have been from a horse other *839 than Elli Kay. However, this contention is highly unlikely. The sample was traced from the spit box to the laboratory and through its testing. Evidence showed care in the marking and sealing of the sample to avoid error or mistake. During the testing, each urine sample is always kept in a numbered beaker, having been assigned that number from the outset of the testing. Mrs. Alena Picha, a biochemist who performs racing sample tests for Shilstone Laboratories, further testified that she completed all the tests on one urine sample before going on to the next sample, therefore eliminating the possibility of any samples being interchanged. Evidence showed further the samples were given by Mrs. Picha to Anthony B. Shoaf, assigned to the Gas Chromotography section of Shil-stone, who performed the tests under the direction of A. H. Siebert, Director of the Chemical Department.
We might point out, however, that we find it most unusual that the Racing Commission did not afford the owner an opportunity to have the specimen tested by his own chemist before the remainder of the specimen was destroyed when a posi-' tive finding had been made by the State Chemist, regardless that Rule 6(x)[10] provides that the owner, trainer, or authorized agent or chemist representing them may be present at all times.[11] Fairness and equity would dictate that the owner ought to be provided with this additional protective device.
Irrespective of these findings, appellants argue that the Commission erred in concluding that the trainer and owner were negligent in failing to provide proper security for Elli Kay. Rule 6(p), supra, provides that when a report is received from the State Chemist indicating the presence of a stimulant, depressant or analgesic, this shall be prima facie evidence that it was administered to the horse and that the owner, trainer or groom has been negligent.
Appellants insist that no prima facie case was established before the Commission, and its findings and determinations should not be given the presumption of validity[12] because the Commissioners were intent on upholding the ruling of the Stewards rather than in objectively considering the evidence. We do not agree. The Commission hearing was a long and protracted one covering six days in duration. The opportunity was afforded to all parties in interest to present whatever evidence they deemed might assist their cause.
The evidence shows that Elli Kay was left unattended sometime during the hours of 5 :30 and 6:00 a. m. on the morning of the race in question. The responsibility for security to prevent the occurrence as in the instant case falls upon the trainer and owner. The presence of Bute in the sample can only be attributable to the failure to provide proper and adequate safeguards, appellants’ claims to the contrary notwithstanding. This is not too harsh a standard to place upon the owner and trainer. Also, according to the testimony of Mr. Root, an employee of Mr. Tassistro, instructions on security were not particularly stressed.
Appellants failed to carry the burden required to overcome the prima facie presumption provided for in Rule 6(p). We might add that Elli Kay was left unattended the night before the race except for the presence of a dog. This appears to be a questionable practice.
It must, however, be made perfectly clear that at no time in this particular *840 case nor at any stage of the proceedings, either before the Stewards, the Commission or the courts, has there been an implication or reference to intentional wrongdoing by either the trainer or the owners. Quite to the contrary, the result is predicated on the failure to provide adequate security. There is not the slightest inference that the trainer or his employees or agents administered the drug or that the owner knew of and condoned such practices. Nevertheless, it is necessary in order to maintain the integrity of thoroughbred racing and to insure that every race run will represent a true competitive effort by every participating horse and rider that high standards of security must be established and maintained. This is the very reason for the rules of racing adopted by the Commission. While they appear to be somewhat stringent, they are, nevertheless, necessary to protect the interest of the public and to insure the integrity of racing.
While this is an appeal from a denial of injunctive relief in the district court, the record on review is that as compiled at the administrative hearing. The trial court in accordance with LSA-R.S. 49.964(F) takes the evidence as submitted before the hearing and considers only that evidence in reaching its determination. The hearing in the district court is an appeal from the Commission’s ruling. Our consideration is in the nature of an appeal from an appeal of the Commission’s findings.
The burden is, therefore, upon the appellants to show the trial court erred in finding that there was substantial evidence supporting the findings of the Commission. In the absence of such error, those findings should not be disturbed. We find no such error here. Accordingly, the judgment of the trial court is affirmed.
Affirmed.
APPENDIX
RULES OF RACING, RULE 1
“(a) Any person penalized or disciplined by the Stewards may apply to the Commission for a suspensive appeal staying the effect of the Stewards’ action pending disposition of such appeal by the Commission
“See Appendix, Revised Statutes 4, Section 156.”
RULES OF RACING, RULE 6, Subparagraphs (p) and (x)
“(p) No person shall administer, or cause or knowingly permit to be administered, or connive at the administration of, any drug to any horse entered for a race, which is of such character as could affect the speed of the horse in such race. Every Owner, Trainer or Groom must guard, or cause to be guarded, each horse owned, trained or attended by him in such manner as to prevent any person or persons from administering to the horse, by any method, any drug prior to the time of the start of the race which is of such character as to affect the speed of the horse in such race.
“When a report is received from the State Chemist reflecting in his expert opinion that the chemical analysis of blood, saliva, urine, or other samples taken from a horse indicate the presence of a forbidden narcotic, stimulant, depressant or analgesic, local anesthetic or drugs of any description this shall be taken as prima-facie evidence that such had been administered to the horse. Such shall also be taken as prima-facie evidence that the owner, and/or trainer, and/or groom has/have been negligent in handling of the horse.
“The owner and/or trainer, and/or groom, and/or other person, shall be permitted to interpose reasonable and legitimate defenses before the Stewards and the Racing Commission.”
“(x) During the taking of a sample by a representative of the Commission, the owner, trainer, authorized agent or chemist representing them may be present at all times. The sample so taken shall *841 be placed in an authorized container and shall be immediately sealed; and the evidence of such sealing may be indicated thereon by the signature of such representative of the owner or trainer. The veterinarian representing the Commission shall supervise the delivery of the samples to the chemist selected by the Commission for a report on the chemical analysis of such samples. Costs in connection herewith shall be paid by the Commission. The owner, trainer, authorized agent or chemist representing them shall have the right to attend and witness the examination and testing of said blood, saliva or other excretions of body fluid analysis.”

. Elli Kay was the winner of the 9th race at the Fairgrounds in New Orleans on December 24, 1971. The winning purse was $23,791.95 and $4,000.00 breeder’s award.

. The usual stipulation was not entered into that the matter was being heard in its entirety and not only on a preliminary injunction. However, the trial judge dismissed the suit in its entirety.

. Rule VIII, Section 2, Uniform Rules of the Courts of Appeal.

.The suspension imposed by the Stewards was effective from January 1, 1972 to February 29, 1972. The Commission hearing was completed on March 27, 1972, and the Commission ordered the suspension from March 28 to May 26. The trial court’s judgment dismissing the suit was signed on June 19, 1972, and thereafter the Commission imposed a new suspension effective date from June 29, 1972, to extend for a period of 60 days.

. Rule 1 of the Rules of Racing of the Louisiana Racing Commission. (See Appendix.)

. LSA-R.S. 49:959 provides for rehearing, reopening or reconsideration by an agency within 10 days from the date of entry of the decision. LSA-R.S. 4:154 provides the Commission’s hearings, practice and procedure are as provided in LSA-R.S. 49 :951 et seq.

. Intervenor, owner of the second place horse, argues that the initial hearing had not become final, and therefore subsequent evidence received was a continuation of the first hearing. However, the result reached by us makes any consideration of intervenor’s contention unnecessary. The same result would follow.

. See Appendix.

. According to the testimony of Dr. Shil-stone, A. H. Siebert, and Mrs. Picha, six tests were run, five resulting in positive findings and one negative. Although the record is confusing in this respect, it appears that reliance was placed on the findings made in the following tests : Vi-tali Test, Diazo Test, Spectrophotometric Curve, Thin Layer Chromotography Test —all positive; Crystal Test — negative. Apparently other tests were performed. In addition, Mr. Anthony R. Shoaf performed the gas chromotography test which proved to be positive. This test is in the nature of a confirmation of the findings of the other tests.

. See Appendix.

. The record reflects that neither the trainer, owner, agent or owner’s chemist was present for the testing.

. The presumption of the validity of the administrative hearing is applicable and great weight must be awarded the Commission’s findings. First National Bank of Abbeville v. Sehrt, 246 So.2d 382 (La.App. 1st Cir. 1971) ; Beaver v. Louisiana State Board of Optometry Exam., 206 So. 2d 118 (La.App. 3rd Cir. 1968) ; LSA-R.S. 49 :964(G).