407 So.2d 269 (1981)
John SIMMONS, et al., Appellants,
v.
The DIVISION OF PARI-MUTUEL WAGERING, DEPARTMENT OF BUSINESS REGULATION, State of Florida, Appellee.
No. 81-59.
District Court of Appeal of Florida, Third District.
December 8, 1981.
Rehearing Denied January 6, 1982.
DuFresne & DuFresne, Miami, for appellants.
David M. Maloney, Tallahassee, for appellee.
Before SCHWARTZ, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
We are called upon to decide whether Section 550.241, Florida Statutes (Supp. 1980), is constitutional in the face of an attack by the appellants, certain owners and trainers of horses (hereafter, horsemen) that this law constitutes (1) a taking of property without just compensation; (2) an invalid exercise of the police power because not rationally related to the purpose of regulating racing; (3) an improper delegation of legislative authority to the Division of Pari-Mutuel Wagering; and (4) is so vague as to invite arbitrary application.[1] These same attacks were rejected by the trial court.
*270 The dispute concerns that part of Section 550.241, Florida Statutes (Supp. 1980), which provides:
"(1) The racing of an animal with any drug, medication, stimulant, depressant, hypnotic, narcotic, local anesthetic, drug masking agent, or any substance foreign to the natural horse or dog is prohibited... . Rules may be promulgated which identify:
"(a) Unacceptable levels of substances existing naturally in the untreated dog or horse but at abnormal physiological concentrations, or
"(b) Acceptable levels of trace elements or innocuous substances in test samples."[2]

I.
The horsemen's challenges that (1) the law is a "taking" without compensation, and (2) the law is not a valid exercise of police power because not rationally related to the purpose of regulating racing are met by the Division's assertion that even assuming a property right,[3] all property rights are subject to the valid exercise of the Legislature's police powers. Thus, says the Division, there is no "taking" requiring compensation if the police power is validly exercised.
The State, "in the interest of protecting both the health of thoroughbred horses and the integrity of the sport from which the state derives revenues ... has a valid objective in seeking to prevent drugging of race horses." Division of Pari-Mutuel Wagering v. Caple, 362 So.2d 1350, 1355 (Fla. 1978).[4] Since this objective is valid, the only remaining questions are whether (a) an absolute ban of drugs and medication and (b) an absolute ban on any substance foreign to the natural horse or dog are reasonable means of attaining that objective. In determining the reasonableness of legislation aimed at the regulation of pari-mutuel wagering, the Florida Supreme Court has held that:
"The state has become peculiarly interested in racing because of the revenues from the pari-mutuel betting. Authorized gambling is a matter over which the state may exercise greater control and exercise its police power in a more arbitrary manner because of the noxious *271 qualities of the enterprise as distinguished from the enterprises not affected with the public interest and those enterprises over which the exercise of the police power is not so essential for the public welfare." (emphasis supplied).
Hialeah Racing Course, Inc. v. Gulfstream Park Racing Association, Inc., 37 So.2d 692 (Fla. 1948), appeal dismissed, 336 U.S. 948, 69 S.Ct. 885, 93 L.Ed. 104 (1949). Therefore, while it is conceivable that the objective of preventing drugging could be attained by less stringent means, given the Legislature's great power to regulate racing and its determination that the practice of drugging animals corrupts the sport,[5] we certainly cannot say that to prohibit the racing of an animal with drugs is not rationally related to the regulation of racing or is an unreasonable means to accomplish that regulation. However, we must find otherwise in respect to the prohibition of "any substance foreign to the natural horse or dog." While the Legislature's exercise of power will be declared invalid only when shown to be arbitrary and unreasonable, McInerney v. Ervin, 46 So.2d 458 (Fla. 1950), a law is unreasonable where it is not rationally related to the purpose of the act.[6]Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); Southern Railway Co. v. Greene, 216 U.S. 400, 30 S.Ct. 287, 54 L.Ed. 536 (1910).
In Horsemen's Benevolent and Protective Association, Florida Division v. Division of Pari-Mutuel Wagering, Department of Business Regulation, 397 So.2d 692 (Fla. 1981), the court invalidated Section 550.2615, Florida Statutes (Supp. 1978). The statute provided that each racing licensee pay one per cent of any purse won to a horsemen's association. The funds were then to be used "in accordance with the stated goals" of the association. The Division argued that the statute would encourage the year-round stalling of horses in Florida, which would further development of a year-round racing program in the state. The court acknowledged that was a valid objective, but held the act was not a reasonable means of accomplishing that goal, since there was no requirement that the funds be spent consistent with enhancing state revenues.
Applying this same test to Section 550.241, it is indisputable that the objectives of this statute are valid. The avowed purposes of the act are to preserve the integrity of the sport of racing from corruption, to keep the wagering public from being misled, to reduce the risk of injury, and to protect the animals from cruel and inhumane treatment. To prohibit "any substance foreign to the horse" is to prohibit everything, the helpful and the harmful, the beneficial and the detrimental, the benign and the deleterious. When measured against the articulated reasons for the enactment of the statute, that part of the *272 statute banning any foreign substance cannot be said to bear a fair and substantial relationship to the objectives sought. Department of Business Regulation v. National Manufactured Housing Federation, Inc., 370 So.2d 1132 (Fla. 1979); Shevin v. International Inventors, Inc., 353 So.2d 89 (Fla. 1977); State ex rel. Parker v. Frick, 150 Fla. 148, 7 So.2d 152 (1942). See Kuster Enterprises, Inc. v. State of Florida, Department of Transportation, 357 So.2d 794 (Fla. 1st DCA 1978).
We decide, however, that the inclusion of this irrational ban on any foreign substance does not require us to declare all of Section 550.241, Florida Statutes (Supp. 1980), invalid. Applying the severability test of Cramp v. Board of Public Instruction of Orange County, 137 So.2d 828 (Fla. 1962), see also State v. Champe, 373 So.2d 874 (Fla. 1979); State v. Lee, 356 So.2d 276 (Fla. 1978), we find that the invalid clause, that is, "or any substance foreign to the natural horse or dog," can be separated from the remaining valid provisions; the legislative purpose expressed in the valid provisions can be accomplished independently of the invalid clause; the invalid clause is separable in substance from the valid clause so as to permit the conclusion that the Legislature would have passed one without the other; and Section 550.241 will be complete in itself after the invalid clause is stricken.

II.
The horsemen next challenge Section 550.241 as being an unlawful delegation of rulemaking authority,[7] because, they contend, it does not contain "adequate standards to guide the agency in [its] execution of the powers delegated." But this general rule requiring that express guidelines and standards be enunciated by the Legislature is inapplicable to the present case. As this court so recently said in upholding the constitutionality of Section 550.02(3), Florida Statutes (1977), in the face of an identical attack:
"Legalized gambling operates only by permission of the state. An agency may ... exercise police powers in furtherance of the statutory purpose despite the absence of specific guidelines. We hold that Section 550.02(3) constitutes a valid delegation of authority to the agency."
Solimena v. State of Florida, Department of Business Regulation, Division of Pari-Mutuel Wagering, 402 So.2d 1240, 1247 (Fla. 3d DCA 1981). Our approval in Solimena of the broad delegation to the Division of Pari-Mutuel Wagering to
"... make rules and regulations for the control, supervision and direction of all applicants, permittees and licensees, and for the holding, conducting and operating of all racetracks, race meets, races held in this state... ."
requires, a fortiori, our holding here that the more restrictive delegation found in Section 550.241, Florida Statutes, is not unlawful.
Our holding that an attack on a statute grounded on the doctrine of non-delegation does not lie would not, of course, preclude the horsemen from making the quite different attack that some rule promulgated by the Division pursuant to its grant of authority is not "reasonably appropriate to the accomplishment of the purposes of the act." State ex rel. Mason v. Rose, 122 Fla. 413, 165 So. 347 (1936); see Division of Pari-Mutuel Wagering v. Caple, supra; Solimena v. State of Florida, Department of Business Regulation, Division of Pari-Mutuel Wagering, supra.[8] But, as we have noted, *273 see n. 2, supra, this appeal presents no such issue, the horsemen's challenges being to the statute.
Accordingly, we declare unconstitutional that clause of Section 550.241, Florida Statutes (Supp. 1980), which prohibits the racing of any animal with "any substance foreign to the natural horse or dog." In all other respects, we hold the statute to be constitutional and affirm the judgment of the trial court.
Affirmed in part; reversed in part.
NOTES
[1] The horsemen also attack the constitutionality of Section 550.24, Florida Statutes (Supp. 1980), which, inter alia, makes criminal the administration of "any medication or drugs prohibited by law" for the purpose of affecting the outcome of a race. No separate analysis of the attack on this statute is required.
[2] The parties disagree whether a rule, Rule 7E-1.09(9), was actually promulgated or merely proposed by the Division. The trial court did not address the substance of the rule, which, whether proposed or promulgated, has since been changed, and the validity of the rule itself is not an issue on this appeal. We do note in passing that to the extent Rule 7E-1.09(9) permitted a horse to run in a race with two micrograms or less of phenylbutazone or oxyphenbutazone per milliliter of plasma in the body, it allowed that which the statute prohibits and was at least to that extent invalid.
[3] The Division also asserts that since the Legislature may prohibit racing altogether, the right to race horses is a privilege. Since racing is a privilege, the owners and trainers have no property right which is being taken. The privilege versus right argument was rejected in Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). As Justice Brennan, joined by three other members of the court, noted in a concurring opinion.

"[The New York State Racing and Wagering Board] seek[s] to avoid [the licensee's right to due process] by characterizing the appellee's license as a `privilege' and arguing that one who has accepted the benefits of a license is precluded from challenging the conditions attached to it, including the procedures for suspension and revocation. (citations omitted). The Court properly rejects this contention  indeed, does not even mention it. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), emphasized that `the Court has fully and finally rejected the wooden distinction between "rights" and "privileges" that once seemed to govern the applicability of procedural due process rights.'" 443 U.S. at 70-71, 99 S.Ct. at 2652.
Although the context of Barry was procedural due process, not "taking without compensation," it is no less persuasive for the proposition that the privilege versus right analysis is outdated.
[4] In Caple, supra, the court held that administrative rules of the Division of Pari-Mutuel Wagering making thoroughbred horse trainers absolute insurers when certain rule violations occur "constitute a reasonable means of eliminating or minimizing the possibility of illegal drugging by placing total responsibility on the person most capable of controlling the problem." 362 So.2d at 1356.
[5] The Legislature's findings, a preamble to the creation of Section 550.241, Florida Statutes (Supp. 1980), are:

"(1) The practice of drugging or medicating a racing animal prior to a race:
"(a) Corrupts the integrity of the sport of racing and promotes criminal fraud in such sport,
"(b) Misleads the wagering public and those desiring to purchase such animal as to the condition and ability of such animal,
"(c) Poses an unreasonable risk of serious injury or death to the rider of such animal if a horse and to the riders of other horses competing in the same race, and
"(d) Is cruel and inhumane to the animal so drugged or medicated;
"(2) The practice of drugging or medicating a racing animal prior to a race adversely affects the interests of the state; and
"(3) Criminal penalties and other sanctions are necessary in order to prevent and eliminate such practices."
Ch. 80-270, § 1, Laws of Fla.
[6] The horsemen challenge Section 550.241 on vagueness grounds as well. A prior rule which prohibited the racing of a horse with any "narcotic, stimulant, depressant or local anesthetic" survived a similar challenge in Calfin v. State, Department of Business Regulation, 391 So.2d 739 (Fla. 4th DCA 1980). The clause prohibiting "any substance foreign to the natural horse or dog" can be said to be vague only in the sense that its open-endedness makes it impossible to determine whether the ban is rationally related to the purpose of the act. Because we hold the clause invalid based on the vice of no rational relationship, see infra, we need not separately address the vagueness attack.
[7] The Division says that this challenge was not made in the court below and cannot be raised for the first time here. We find such a challenge in the horsemen's complaint, as well as in their memorandum in support of their motion for summary judgment. Indeed, the Division directly responded to this challenge in its motion for summary judgment. The trial court, in its final judgment, upholding the constitutionality of the statute, specifically held the delegation lawful.
[8] Indeed, prior to Solimena, in every case in which a rule of the Division of Pari-Mutuel Wagering was challenged, the inquiry has been whether the rule in question was reasonably appropriate to the accomplishment of the purposes of the act, not whether the statute offended the doctrine of non-delegation. See Division of Pari-Mutuel Wagering v. Caple, supra; Department of Business Regulation v. Vandervoort, 273 So.2d 66 (Fla. 1973); Hialeah Racing Course, Inc. v. Gulfstream Park Racing Association, Inc., supra; State ex rel. Palm Beach Jockey Club, Inc. v. Florida State Racing Commission, 158 Fla. 335, 28 So.2d 330 (1946); State ex rel. Hollywood Jockey Club, Inc. v. Stein, 133 Fla. 530, 182 So. 836 (1938); State ex rel. Allen v. Rose, 123 Fla. 544, 167 So. 21 (1936); State ex rel. Mason v. Rose, supra; Calfin v. State, Department of Business Regulation, supra. Implicit in these cases was that specific guidelines in the statute were unnecessary. In Solimena, that was made clear.