GALE D. KLINE, Plaintiff-Appellant, v. THE ILLINOIS RACING BOARD, Defendant-Appellee.

First District (2nd Division)   No. 83—1870

Opinion filed September 18, 1984.—Rehearing denied October 16, 1984.

Edward V. Hanrahan, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Nancy C. Lischer, Assistant Attorney General, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Gale D. Kline, appeals from the decision of the circuit court of Cook County which upheld the determination of the Illinois Racing Board (Board) to suspend plaintiff's "occupation license" for two concurrent 90-day periods and to order a forfeiture and redistribution of the purse money for two races won by plaintiff's horse, Lu's Priority. The Board found that plaintiff had violated the rule which requires an owner to guard his horse and the rule prohibiting a horse from carrying a "foreign substance" in its body during a race.

The Board and stewards are charged with regulating Illinois horse racing pursuant to the Horse Racing Act (Ill. Rev. Stat. 1979, ch. 8, par. 37—1 et seq.). The stewards are representatives of the Board and supervise races. They have authority to investigate alleged violations of Board rules, to determine whether the rules have, in fact, been breached, and to impose punishment therefor. The stewards' decisions may be appealed to the Board for a de novo hearing. The Board's decision is appealable to the circuit court for administrative review. Ill. Rev. Stat. 1979, ch. 8, par. 37—16.

Plaintiff is a licensed owner-trainer of standardbred racehorses (trotters). He resides, and stables his horses, in Michigan. The subject horse won the eighth race at Balmoral Park on October 8, 1982, and the fourth race at Maywood Park on October 15, 1982. Both races were run at night. Tests by the Board of the horse's urine after each of the two races disclosed the presence of scopolamine in the horse.

An initial "steward's ruling" was issued on December 30, 1982, with regard to the October 8 race. The ruling found that plaintiff had violated two Board rules, Rule C9.4, which bans foreign substances in horses, and Rule C9.20, which requires trainers to guard their horses prior to a race. The same horse also tested positive for the presence of scopolamine following the October 15 race, but before the steward's inquiry was completed the parties agreed to consolidate the findings from both races in plaintiff's de novo appeal to the Board.

Plaintiff's hearing before the Board took place on January 19, 1983. Before any testimony was taken, the parties stipulated to the following facts: that the horse's urine samples taken after the two races in issue showed the presence of "scopolamine"; the testing was properly administered; prior to the two races in question, plaintiff had caused the horse to be guarded except for a period of 35-40 minutes before each of the two races; if plaintiff's veterinarian were to testify,

he would state that he is the sole veterinarian for this horse and he had administered no medication to Lu's Priority except for a single unrelated vaccination; the horse was fed hay grown on plaintiff's farm; and that testing on the hay demonstrated the presence of jimsonweed.

The first witness was Dr. Paul B. Smith, a veterinarian for the Board. He testified: "Scopolamine" is a very potent drug and is classified as a central nervous system stimulant. Horses become "excited" by it. Depending upon the dosage, scopolamine may affect a horse, ranging from causing death to no effect at all. The drug is used to slow the action of a horse's "gut"; it is an "old time" remedy used to alleviate a case of "heaves." One source for scopolamine is the poisonous plant jimsonweed.

In Dr. Smith's opinion, scopolamine could be found at a racetrack in two medications: "BySol M," a product used to cure diarrhea which is "not commonly" now used, and "Bells," a remedy which is sometimes used by lay persons to alleviate colic when a veterinarian is not available. Bells is a powerful stimulant and has, in the past, been used to improperly stimulate a horse before a race. Dr. Smith testified that a horse "injected with a therapeutic dose" of scopolamine would not be raceable because the strong effects of the drug would cause his eyes to dilate and he would become extremely excited or nervous.

Dr. Smith testified that horses find jimsonweed very distasteful. They resent being near it due to its "particular odor" and will not eat it. It is possible, of course, that a horse would "inadvertently" eat hay containing jimsonweed if the latter is in small concentration. If a small dose of scopolamine was ingested by a horse, it could take three to four hours to affect the horse, and the effect would be "slow and subtle." Also, when a horse has ingested the drug over a period of time, he would build up a tolerance for it. If even a small dose of scopolamine is "injected" into a horse, his eyes will become dilated and his mouth will become dry. The dilation of the pupils will make the horse particularly sensitive to light, making it difficult to race at night under the lights.

Dr. Smith testified that he observed Lu's Priority after each of the races in issue and that the horse was "frisky." He did not look for, nor see, any dilation of the horse's eyes.

Plaintiff was the only other witness to testify. He stated that Lu's Priority had not been under medication for any illness. He said he had not even heard of scopolamine before these two incidents. He found no products on his farm which included scopolamine as an ingredient. Jimsonweed is common in his farm area.

The parties submitted written memoranda to the Board.

On February 17, 1983, the Board issued its written decision. The Board found that Kline had violated the Board rules and suspended Kline's occupation license for 90 days and ordered redistribution of the purses from the two races. The Board found, *inter alia*, that Kline's admission that he left his horse unguarded for 35 to 40 minutes before each of the two races in issue constituted a violation of the Board's guarding rule, Rule C9.20, which provides, in part:

> "Every trainer has the duty to guard or cause to be guarded each horse trained by him/her in such manner as to prevent any person, including his/her veterinarian, from administering to such horse any foreign substance in violation of these rules."

The Board also found a violation of Rule C9.4, which states: "No horse participating in a race shall carry in its body any foreign substance (irrespective of when administered or injected). ***" The Board also found:

> "Irrespective of the theoretical effect of scopolamine, we note that Lu's Priority had a history of going off-stride during races. This horse, a trotter, had broken off the trotting gait on at least four occasions prior to the October 8th race. Nonetheless, the horse remained on stride for the October 8th and the October 15th races. Additionally, Lu's Priority raced faster in these two races than in all but one of its prior races."

Plaintiff then filed a complaint for administrative review, alleging that the Board's decision was erroneous and contrary to the evidence and that the Board's rules, as interpreted by the Board, were arbitrary, unreasonable and contrary to law. The trial court entered an order affirming the Board's ruling, from which plaintiff appealed.

THE FOREIGN SUBSTANCE RULE

■ Plaintiff contends there is no evidence upon which the Board could find that plaintiff violated the rule banning foreign substances and that such rule is, in any event, unconstitutionally overbroad because it prohibits "any" foreign substance, whereas the rule should only be applied to foreign substances which are found to "affect a horse's racing performances." Plaintiff also contends the rule is applied under an unreasonable and unconstitutional presumption, *viz*, that proof of "mere presence" of a foreign substance in a horse results in the Board's taking as true the further fact that by virtue of the presence of the substance "the horse thereby had an unfair advantage over its competitors."

As noted, the rule prohibits any horse participating in a race from carrying any "foreign substance" in its body. The rules further define

foreign substance as "all substances except (a) those which exist naturally in the untreated horse at normal physiological concentrations or (b) substances, or metabolites thereof, which are contained in equine feeds or feed supplements but do not contain any pharmacodynamic and/or chemotherapeutic agents." Board Rule C9.8 contains provisions for amending the rules to permit certain foreign substances to be allowed to be carried by a horse. Board Rule C9.9 sets forth the list of various "foreign substances" which have been approved by the Board. Scopolamine is not among them.

Plaintiff appears to contend that because the Board's rules are intended to protect the "integrity" of competition in horse racing, and foreign substances which "do not so affect a horse's racing performance pose no threat" to the integrity of the race, it follows that the banning of "all" foreign substances, including those which do not "affect" a horse's racing ability, is unconstitutionally overbroad.

In support of his argument that the rule is overbroad, defendant relies on the opinion in *Simmons v. Division of Pari-Mutuel* (Fla. App. 1981), 407 So. 2d 269, *aff'd* (Fla. 1982), 412 So. 2d 357, wherein the court struck down the portion of a Florida racing rule which prohibited the racing of a horse who had in him during a race "any substance foreign to the natural horse":

> "[W]e certainly cannot say that to prohibit the racing of an animal with drugs is not rationally related to the regulation of racing or is an unreasonable means to accomplish that regulation. However, we must find otherwise in respect to the prohibition of 'any substance foreign to the natural horse or dog.'
>
> * * *
>
> To prohibit 'any substance foreign to the horse' is to prohibit everything, the helpful and the harmful, the beneficial and the detrimental, the benign and the deleterious. When measured against the articulated reasons for the enactment of the statute, that part of the statute banning *any* foreign substance cannot be said to bear a fair and substantial relationship to the objectives sought." (407 So. 2d 269, 271-72.)

We understand plaintiff's attack on the Board's rule prohibiting horses from racing when they have *any* foreign substances in them to be premised on the contention that the rule is an unreasonable exercise of the State's police power. The scope of the inquiry into whether a statute, or rule, is properly promulgated pursuant to the State's police power has been defined by our supreme court:

> " 'The police power is an attribute of sovereignty inherent in every government. It has been reserved to all the States by the

constitution of the United States. [Citations.] While it is not without limitation and may not be exercised arbitrarily, the legislatures of the States have broad discretion in the passage of statutes in its exercise. [Citation.] When the legislature has considered a problem and enacted legislation thereon, the act is presumptively a valid exercise of the power and the burden rests upon the one assailing the statute to show that it is without reasonable basis and entirely arbitrary. [Citations.]' (*Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 123.) The police power may be exercised to protect the public health, safety, morals, and general welfare or convenience. (*Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 326; *Clarke v. Storchak* (1943), 384 Ill. 564, 577.) To be a valid exercise of police power, the legislation must bear a reasonable relationship to one of the foregoing interests which are sought to be protected, and the means adopted must constitute a reasonable method to accomplish such objective. (*Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 327; *Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 509.) Although the determination of reasonableness is a matter for the court, the legislature has broad discretion to determine not only what the interests of the public welfare require but what measures are necessary to secure such interest. (*Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 127; *Clarke v. Storchak* (1943), 384 Ill. 564, 577.) The court will not disturb a police regulation merely where there is room for a difference of opinion as to its wisdom, necessity and expediency. (*Schuringa v. City of Chicago* (1964), 30 Ill. 2d 504, 515.)" *City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 114-15, 398 N.E.2d 829.

It is well established that the State is granted vast authority in regulating the horse racing business in Illinois.

"Wagering or gambling is an activity which is 'subject to regulation or to complete prohibition' (*Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 138) and one in which the State's interest in protecting the public from dishonest practices and in preserving the integrity of horse racing is clear. It is a truism to say that the horse-racing industry depends upon public confidence in the sport and upon integrity and professional efficiency in its operation. A review of the Horse Racing Act and its comprehensive and detailed list of statutory requirements discloses the legislature's interest in imposing strict controls on an industry which on occasion has been vulnerable to dishonest

men and practices." *Phillips v. Graham* (1981), 86 Ill. 2d 274, 286, 427 N.E.2d 550.

Plaintiff's suggestion that the rule be construed to prohibit only those substances "found to affect a horse's speed" must be rejected. First, as noted, this court is not empowered to disturb a police regulation merely because there may be a difference of opinion as to the rule's wisdom or expediency. Second, the Board found, and plaintiff has not questioned nor contradicted the finding, that there presently exists no reliable scientific manner by which to determine whether a specific substance had an "effect" on a certain horse during a certain race. Since plaintiff's suggested rule would appear impossible to enforce, it has little to recommend it. Even ignoring this substantial hurdle for a moment, we agree with the Board that plaintiff's suggested rule, if adopted, would necessarily result in almost endless conflicts before the winner of a race could be declared; first between chemical and medical experts at the hearings conducted by the stewards and the Board, and then between legal experts appearing before the courts. Endless debates as to whether the speed of a particular horse was "affected" by a given concentration of a certain drug during a given race under prescribed conditions would not, in our opinion, enhance the interests of the Illinois horse racing industry, nor its patrons. The essence of horse racing is the immediate finality of declaring the winner.

We believe that a significant distinction between the rule at issue and that struck down by the Florida court is that in Illinois the Board has set forth a reasonable procedure which permits an orderly amendment of the rules to allow foreign substances to be added to the Board's list of permitted substances after a demonstration that the substance has been shown to have accepted therapeutic effects. Rule C9.8 provides:

> "A foreign substance of accepted therapeutic value may be administered as prescribed by a veterinarian when test levels and guidelines for its use have been approved by the Board and these rules have been duly amended. The Board shall give due consideration to test levels and guidelines that have been established by the Veterinary-Chemist Advisory Committee of the National Association of State Racing Commissioners when making future additions to the permitted list."

We also note that rules from other jurisdictions cited by plaintiff as being more reasonable than the Illinois rule include those which prohibit "any narcotic, stimulant, depressant, local anesthetic or analgesic" (*Hacker v. Pennsylvania Horse Racing Com.* (1979), 46 Pa.

Commw. 263, 405 A.2d 1379); and any "narcotic, stimulant, depressant, chemical or drug of any kind or description" (*O'Daniel v. Ohio State Racing Com.* (1974), 37 Ohio St. 2d 87, 307 N.E.2d 529). These rules, in our opinion, do not significantly differ from the Illinois rule.

Plaintiff also contends that the foreign-substance rule must be stricken because it is improperly bottomed on an irrebuttable presumption. He claims that upon a "mere finding" of a foreign substance in a horse, the Board necessarily determines the further fact that the substance "affected the horse's racing ability." Plaintiff contends that an owner should have an opportunity to present evidence to show that the horse's racing was not "affected" by the substance found. We initially note that the record reflects no attempt by plaintiff to introduce *any* evidence whether by testimony or other means by any chemist, veterinarian or other expert with regard to the nature of scopolamine nor its alleged effects on horses generally, or on Lu's Priority specifically. In any event, we do not agree that this rule requires the employment of an impermissible presumption. As the United States Court of Appeals held in analyzing the substantially similar predecessor to the rule now in issue:

> "In the instant case the Board is not attempting to suspend or punish plaintiffs for a violation of its rules. Rather it is simply attempting to establish an objective and absolute condition that every winning horse must meet before its owner becomes legally entitled to the money in the purse.
>
> * * *
>
> Assuming *arguendo* that [the rule] creates an irrebuttable and conclusive presumption we must review it with disfavor. In so doing, we still believe the rule is permissible because it is not based upon an arbitrary, irrational or unreasonable standard. Unlike *LaFleur, Blandis,* and *Stanley, supra,* the presumption created (i.e. that drugged horses substantially affect performance in a race) is a rational, reasonable, and, we believe, permissible conclusion. In their argument, plaintiffs have ignored a key point; that the presumption created must be arbitrary or unreasonable to be considered impermissible." *Edelberg v. Illinois Racing Board* (7th Cir. 1976), 540 F.2d 279, 283-86.

We hold, therefore, that the Racing Board's rule banning "foreign substances" is a valid exercise of its authority. The rule bears a rational and reasonable relationship to the State's interest in a fair and honest horse racing industry. We find the rule to be neither arbitrary nor unreasonable, and we uphold it.

■ With regard to plaintiff's contention that the Board's determi-

nation that he had violated the foreign-substance rule is against the manifest weight of the evidence, we must disagree. Plaintiff's repeated contention that the "uncontradicted" evidence demonstrates that there was no violation of the rule is manifestly erroneous. Plaintiff stipulated that the horse's urine tested positive for scopolamine after each of the two races. Scopolamine is not on the Board's list of permitted foreign substances. Thus, plaintiff's horse was properly found to be in violation of the foreign-substance rule. Even if we interpreted the rule as plaintiff here requests, *i.e.*, that a violation of the rule could be based only on the presence of a foreign substance shown to "affect" the horse's performance, plaintiff's violation of the rule is apparent. The Board found, without contradiction, that scopolamine is a powerful drug and that plaintiff's horse ran both faster, and straighter, on the two occasions when it had the drug than he had in the past. Plaintiff's contention that he was not in violation of the foreign-substance rule must be rejected.

■ Plaintiff also argues, for the first time on appeal, that the Board's permitting of some foreign substance to be carried in a horse, while not allowing other foreign substances, such as scopolamine, violates the equal protection clause. Plaintiff did not raise this issue before the Board or the circuit court, and we must consider that it has been waived. (*People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.) The reason for the waiver rule is well demonstrated by this case. Had plaintiff raised this issue below, the Board would have had an opportunity to present evidence on the distinction between its permitted and banned foreign substances.

### THE GUARDING RULE

As noted, Board Rule C9.20 (the guarding rule) states in part that each trainer "has the duty to guard \*\*\* each horse \*\*\* in such manner as to prevent any person \*\*\* from administering to such horse any foreign substance." Plaintiff stipulated that he had left his horse unguarded for 35 to 40 minutes before each of the two races in question.

■ Plaintiff first contends that there was "no evidence" to support the Board's finding that he had violated the guarding rule. Plaintiff's argument is that the rule is in two segments, the first of which requires the horse to be guarded and the second of which requires that such guarding be in a manner as to prevent any person from administering a foreign substance to the horse. Plaintiff contends that here the evidence showed that the scopolamine was ingested accidentally by the horse from jimsonweed in its hay and therefore no one "administered" any foreign substance to the horse. Plaintiff argues that be-

cause there was no proof that anyone in fact administered a drug to the horse, there can be no violation of the guarding rule.

The Board responds that plaintiff's admitted failure to guard, in and of itself, constitutes a violation of the rule. The Board points out that plaintiff was not here charged with a violation of Rule C9.6, which prohibits a person from administering a foreign substance to a horse. The Board contends that a foreign substance need not be detected in a horse as a condition precedent to finding a violation of the guarding rule.

In our opinion, plaintiff's stipulation that he left the horse unguarded before each of the two races is sufficient to establish his violation of the guarding rule. We interpret the second section of the rule to explain and describe the activity which the trainer is responsible for guarding against. (See *Ray v. Illinois Racing Board* (1983), 113 Ill. App. 3d 510, 447 N.E.2d 886.) We do not believe the second section of the guarding rule requires that a violation of the rule can only be established by proof of a subsequent illicit administering of a drug to a horse. (Even were we to interpret the guarding rule as plaintiff urges, *viz*, that a violation of the rule requires proof of both a failure to guard as well as a drugging of the horse, plaintiff would still have properly been found to have violated the rule in light of his stipulations to both failing to guard and to the fact that the horse carried scopolamine within him.)

We note that Board Rule C9.21, entitled "Prima Facie Evidence," provides that if a horse is determined to carry a foreign substance, such is *prima facie* evidence that the trainer has violated the rules prohibiting unlawful administration of a foreign substance or the guarding rule, and the trainer then "has the burden of going forward with the evidence." Such *prima facie* evidence standards for guarding rules have been upheld. (See *Barry v. Barchi* (1978), 443 U.S. 55, 61 L. Ed. 2d 365, 99 S. Ct. 2642; *Tassistro v. Louisiana State Racing Com.* (La. App. 1972), 269 So. 2d 834; Garrison & Klein, *Brennan Revisited: Trainer's Responsibility for Horse Race Drugging*, 70 Ky. L.J. 1103 (1981-82).) Because in the present case the parties stipulated both that plaintiff failed to guard his horse and that the horse was found to have a foreign substance, we find it unnecessary to consider whether a violation of the guarding rule could exist when a trainer showed that he had taken every reasonable guarding measure. See *Maryland Racing Com. v. McGee* (1957), 212 Md. 69, 128 A.2d 419.

For the reasons stated herein, the order of the circuit court upholding the decision of the Illinois Racing Board is affirmed.

Affirmed.

HARTMAN, P.J., and STAMOS, J., concur.