693 S.E.2d 93

**Fred and Sharon JOHNSON Plaintiffs Below, Appellants,**

v.

**BOARD OF STEWARDS OF CHARLES TOWN RACES, Defendant Below, Appellee.**

No. 35285.

Supreme Court of Appeals of West Virginia.

Submitted March 3, 2010.

Decided April 5, 2010.

was guilty of murder—not that the prosecutor believed that the defendant had a bad character.

James P. Campbell, Esq., Campbell Flannery, P.C., Leesburg, VA, for Appellants.

Raymond J. Funkhouser, Charles Town, WV, Pro se amicus curiae.

Darrell V. McGraw, Jr., Attorney General, Benjamin F. Yancey, III, Assistant Attorney General, Charleston, WV, for Appellee.

PER CURIAM:

In this appeal from the Circuit Court of Jefferson County, we are asked to consider the constitutionality of a West Virginia Racing Commission rule that prohibits the racing of a horse that is carrying in its body "any drug substance." The appellants assert that this "zero tolerance" rule is arbitrary, capricious, and not rationally related to the regulation of horse racing. The circuit court rejected the appellants' assertion and found the rule to be constitutional.

After careful consideration of the rule and our precedents, we find that the rule is constitutional and rationally related to (1) the goal of preventing horses from being raced when they have *any* drug-like substance in them, and (2) the goal of preventing post-race litigation regarding whether that substance had any effect on the horse's race performance. As set forth below, we affirm the circuit court's ruling.

## I.

### Facts and Background

On October 20, 2007, the Charles Town Racetrack in Charles Town, West Virginia hosted the 2007 West Virginia Breeders Classic. The winner of the seventh race—and a $225,000 prize—was the horse "Eastern Delite" owned by the appellants, Fred and Sharon Johnson.

Following the race, tests on Eastern Delite were positive for the drug caffeine. The Johnsons appealed this finding to the Board of Stewards [1] at the Charles Town Race Track, where they were permitted to offer expert testimony by a veterinary pharmacologist. The pharmacologist testified that the small amount of caffeine in Eastern Delite—alleged to be the quantity equivalent to ingesting a teaspoon of coffee—had no impact upon Eastern Delite's race performance, and likely came from environmental contamination (such as from the horse ingesting a spilled drink containing caffeine).

Nevertheless, the Board of Stewards ruled that the appellants had violated a "zero tolerance" rule prohibiting a horse from running in any race with any drug in its system. The rule, 178 C.S.R. § 66.5 [2007], was promulgated by the West Virginia Racing Commission and states (with emphasis added):

> No horse participating in a race shall carry in its body *any drug substance*, its metabolites, or analog, which are *foreign to the natural horse* except as provided, by this rule.[2]

The Board of Stewards disqualified Eastern Delite, and ordered that the prize purse for the race be redistributed.

The Johnsons appealed the ruling of the Board of Stewards to the West Virginia Racing Commission, which affirmed the ruling.

1. The West Virginia Racing Commission is charged with the overall regulation of horse racing in West Virginia. *See W.Va.Code*, 19–23–1 *et seq.* Each horse racing track has a three-member Board of Stewards responsible for officiating racing at the particular track, and applying racing laws and regulations to conduct occurring in a horse race. *See* 178 C.S.R. § 9.1 and §§ 10.1 to 10.23. Violations of racing laws and regulations are recorded by way of rulings from the particular Board of Stewards; those rulings may then be appealed to the Racing Commission.

2. The Racing Commission's rules provide an exception for three drugs that may be used in race horses to treat medical conditions: phenylbutazone ("bute"), oxyphenylbutazone ("adjunct bute"), and furosemide ("lasix"). *See* 178 C.S.R. §§ 66.5.1 to 66.5.4.

The Johnsons then appealed the Racing Commission's ruling to the Circuit Court of Jefferson County, and asserted that the zero-tolerance rule was unconstitutional. The circuit court, however, affirmed the Racing Commission's ruling in an order dated March 11, 2009. Noting that "[t]he essence of horse racing is the immediate finality of declaring the winner," the circuit court determined that the Racing Commission's rule was constitutional. The circuit court found that the zero-tolerance rule was designed to "take uncertainty out of the [post-race testing] process and eliminate litigation in every case resulting in a positive test," largely because "determining whether such positive tests had an actual impact upon a horse in a race would be impractical[.]"

The Johnsons now appeal the circuit court's March 11, 2009, order that affirmed the Board of Stewards' disqualification of Eastern Delite and ordered the redistribution of the purse.

## II.

### *Standard of Review*

The Johnsons assert in their appeal that the Racing Commission's zero-tolerance drug substance rule, 78 C.S.R. § 66.5, is unconstitutional because it is arbitrary, capricious, and has no rational relationship to the regulation of horse racing.

■ With respect to the constitutionality of the Racing Commission's rule, we employ a *de novo* standard to review the circuit court's decision: "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995). *Accord* Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

■ To find that a rule or statute is unconstitutional, it must be shown that the rule or statute is unconstitutional beyond a reasonable doubt:

> In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt.

Syllabus Point 1, *State ex rel. Appalachian Power Company v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965).

## III.

### *Discussion*

The appellants contend that the zero-tolerance rule, 178 C.S.R. § 66.5, does not have a rational basis, and is therefore wholly, clearly and palpably arbitrary and capricious, and cannot be enforced. The appellants assert that the rule requires the disqualification of a horse from a race for ingesting *any* substance foreign to the horse, even if that substance has no impact on racing or equine performance. The appellants argue that the evidence below established that the amount of caffeine in Eastern Delite had absolutely no impact on the horse's performance. Under these circumstances, the appellants believe it would be arbitrary and capricious to disqualify Eastern Delite under the zero-tolerance rule.

As authority for this proposition, the appellants cite to *Simmons v. Division of Pari-Mutuel Wagering*, 407 So.2d 269 (Fla.App. 1981), *aff'd*, 412 So.2d 357 (Fla.1982) (*per curiam*). In *Simmons*, several owners and trainers of horses challenged the constitutionality of a statute (somewhat similar to

West Virginia's zero-tolerance rule) that read:

> The racing of an animal with any *drug,* medication, stimulant, depressant, hypnotic, narcotic, local anesthetic, drug masking agent, or *any substance foreign to the natural horse* or dog is prohibited....

*Simmons,* 407 So.2d at 270 (emphasis added). The owners and trainers asserted that the statute was wholly unconstitutional because it was not rationally related to the purpose of regulating racing. The Florida court, however, came to a mixed conclusion about the statute's constitutionality. The court ruled that the statute's "absolute ban of drugs and medication" was a rational, constitutional exercise of the "Legislature's great power to regulate racing and its determination that the practice of drugging animals corrupts the sport[.]" 407 So.2d at 270–271. But as for the ban on "any substance foreign to the natural horse," the court found the statute was not rationally related to a proper purpose because it prohibited "everything, the helpful and the harmful, the beneficial and the detrimental, the benign and the deleterious." 407 So.2d at 271–272. Hence, while finding that an absolute ban on drugs in a horse *was* constitutional, the Florida court declared that the clause absolutely banning "any foreign substance" was unconstitutional,

The appellants also cite to *Kline v. Illinois Racing Bd.,* 127 Ill.App.3d 702, 83 Ill.Dec. 60, 469 N.E.2d 667 (1984), where the plaintiff's horse was disqualified from a race for carrying a drug (scopolamine) in its body. The plaintiff challenged the constitutionality of a racing board rule that read:

> No horse participating in a race shall carry in its body any foreign substance (irrespective of when administered or injected).

*Id.,* 127 Ill.App.3d at 705, 83 Ill.Dec. 60, 469 N.E.2d at 670. Like the litigants in *Simmons,* the plaintiff argued that the rule was unconstitutional because it prohibited *any* substance, regardless of whether it had any affect on a horse's speed. The Illinois court, however, rejected *Simmons* and found the rule to be constitutional, in part because the Illinois rule had a "safety valve" section that "set forth a reasonable procedure which per-

mits an orderly amendment of the rules to allow foreign substances to be added to the Board's list of permitted substances after a demonstration that the substance has been shown to have accepted therapeutic effects." 127 Ill.App.3d at 708, 83 Ill.Dec. 60, 469 N.E.2d at 672.

The appellants argue that the West Virginia Racing Commission's zero-tolerance rule is unconstitutional because it does not have the "safety valve" for permitted substances like that in the rule approved in *Kline.* The appellants therefore urge this Court to follow the reasoning of the Florida court in *Simmons* and declare the rule unconstitutional.

This Court has twice reviewed and approved of the West Virginia Racing Commission's power to regulate horse racing, and to prohibit the racing of a horse with drugs in its system.

In *State ex rel. Morris v. West Virginia Racing Commission,* 133 W.Va. 179, 55 S.E.2d 263 (1949), the petitioner was the owner of a horse ("Sunset Boy") that won a race at the Charles Town racetrack. A urine test on the horse performed after the race was found "to contain Atropine, Hyoscyamine or Hyoscine and possibly some other drug." *Morris,* 133 W.Va. at 191, 55 S.E.2d at 269. Racing Commission rules, in effect at the time of the race, stated:

> No narcotic, stimulant or drug shall be used ... for the purpose of stimulating the horse or affecting his speed in a race. Any person so offending shall be suspended for not less than six (6) months, and also any horse showing positive from a saliva test or urine test, containing drugs or stimulant shall be disqualified ...
>
> Any purse won by a horse found to have been stimulated, shall be returned and the same, upon its return, shall be redistributed as if said horse had been disqualified.

133 W.Va. at 182–184, 55 S.E.2d at 265–266. Sunset Boy was disqualified, and the race purse was redistributed.

Likewise, in *State ex rel. Spiker v. W.Va. Racing Commission,* 135 W.Va. 512, 63 S.E.2d 831 (1951), the petitioner was the owner of a horse ("Lucky Linda") that won a race at Wheeling Downs. After the race, a

urine test on the horse was positive for the presence of the drug procaine. Racing Commission rules, in effect at the time of the race, stated that:

> No narcotic, stimulant or drug shall be used ... for the purpose of stimulating the horse or affecting his speed in any way in a race. Any person so offending shall be suspended for not less than six months, and, also, any horse showing positive from saliva and/or urine test shall be suspended ...
>
> Any purse won by a horse found to have been stimulated shall be returned, and the same, upon its return, shall be redistributed as if said horse had been disqualified.

*Spiker*, 135 W.Va. at 518–520, 63 S.E.2d at 835–36. Pursuant to these rules, Lucky Linda was suspended, and her owner's race winnings forfeited and redistributed.

In *Morris*, we indicated that the drugging of race horses was an evil that must be "scotched" by "any reasonable and adaptable method":

> It is evident that the evil sought to be prevented was to avoid either stimulating or depressing a horse, because whatever the effect, the awarding of the purses, and the wagers on the results of the races, would be affected....
>
> No one, we assume, will contend that the drugging of race horses, in such a way as to affect the result of a race, is not an evil which must be scotched wherever present, and by any reasonable and adaptable method.

*Morris*, 133 W.Va. at 191, 194, 55 S.E.2d at 269, 271. We therefore said that the purpose behind the Racing Commission's adoption of rules prohibiting the presence of drugs in race horses "was a laudable one, namely, to avoid, so far as possible, the use of medicine or drugs which might affect the normal ability of a horse to run in a race intended to be conducted under rules of honesty and fairness." 133 W.Va. at 191–192, 55 S.E.2d at 269–270.

In both *Morris* and *Spiker*, we upheld the power of the West Virginia Racing Commission to enact regulations to prohibit the racing of a horse with drugs. In *Morris*, we said that there cannot "be any doubt as to the power of the Legislature to regulate horse racing," and pursuant to that power, the Legislature

> gave to the Racing Commission ... full and complete powers of regulation. The language is broad and general; but it is assumed that it was intended to apply to all problems affecting horse racing, without going into particular detail, or without attempting to set up any particular standards under which the commission might act.

*Morris*, 133 W.Va. at 192, 55 S.E.2d at 270. We approved the Racing Commission's authority with more specificity in Syllabus Point 1 of *Spiker*, where we stated:

> Under the provisions of Section 1, Article 23, Chapter 71, Acts of the Legislature, 1935, Regular Session, conferring power upon the West Virginia Racing Commission to prescribe rules, regulations and conditions under which horse races shall be conducted in this State, such commission has the authority to promulgate and enforce rules which provide that a horse owned by any person may be suspended when its saliva or urine shows the presence of any narcotic, stimulant or drug, and that the purse won by a horse found to have been stimulated shall be returned and redistributed.

In *Spiker*, in addition to challenging the Racing Commission's general authority to regulate racing, the petitioner—like the appellants in the case at bar—challenged the constitutionality of the Racing Commission's rules to prohibit the racing of a horse under the influence of drugs. We plainly rejected that argument, holding in Syllabus Point 2 of *Spiker*:

> Rules Nos. 268 and 274, promulgated by the West Virginia Racing Commission, which respectively provide for the suspension of a horse whose saliva or urine discloses the presence of any narcotic, stimulant, or drug, and for the return and the redistribution of the purse won by a horse found to be stimulated, are not violative of any provision of the Constitution of the United States or of the Constitution of West Virginia, and are valid.

In the case at bar, the zero-tolerance rule at issue has one substantial difference from the rules challenged in *Morris* and *Spiker.* In those earlier cases, the nearly identical regulations at issue only prohibited the administration of medications "used for the purpose of stimulating the horse or affecting his speed" in a race. The zero-tolerance rule in the case at bar prohibits the presence of "any drug substance" regardless of whether the drug substance stimulates the horse or impacts the horse's performance.

The appellants assert this difference makes 78 C.S.R. § 66.5 irrational and unconstitutional. However, the Illinois court in *Kline* directly addressed and rejected an identical argument, stating:

> Plaintiff's suggestion that the rule be construed to prohibit only those substances "found to affect a horse's speed" must be rejected. First, as noted, this court is not empowered to disturb a police regulation merely because there may be a difference of opinion as to the rule's wisdom or expediency. Second, the Board found, and plaintiff has not questioned nor contradicted the finding, that there presently exists no reliable scientific manner by which to determine whether a specific substance had an "effect" on a certain horse during a certain race. Since plaintiff's suggested rule would appear impossible to enforce, it has little to recommend it. Even ignoring this substantial hurdle for a moment, we agree with the Board that plaintiff's suggested rule, if adopted, would necessarily result in almost endless conflicts before the winner of a race could be declared; first between chemical and medical experts at the hearings conducted by the stewards and the Board, and then between legal experts appearing before the courts. Endless debates as to whether the speed of a particular horse was "affected" by a given concentration of a certain drug during a

given race under prescribed conditions would not, in our opinion, enhance the interests of the Illinois horse racing industry, nor its patrons. The essence of horse racing is the immediate finality of declaring the winner.

*Kline,* 127 Ill.App.3d at 706–708, 83 Ill.Dec. 60, 469 N.E.2d at 671–672.

We are persuaded by the Illinois court's reasoning. If we were to adopt the appellants' argument, it would result in endless litigation and debates concerning whether a particular horse was affected by a particular substance. In the end, the winner of a horse race would not be determined by the speed of the horses on the track, but by the dexterity of experts and lawyers in the courtroom.

In *Morris,* we found to be constitutional the Racing Commission's power to eliminate drugs in race horses "by any reasonable and adaptable method." *Morris,* 133 W.Va. at 194, 55 S.E.2d at 271. We find that the Racing Commission's zero tolerance rule is a reasonable method of preventing horses from being raced when they have drugs in their system. We therefore find that 78 C.S.R. § 66.5 is rationally related to the reasonable regulation of horse racing, and is therefore constitutional.

## IV.

### Conclusion

The circuit court's March 11, 2009, order is affirmed.

Affirmed.